**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5799

JERMAINE MAURICE PADGETT, a/k/a
Maurice,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5800

CARLOS EMANUEL KINARD, a/k/a
Carlos,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-93-215-MU)

Submitted: November 15, 1995

Decided: March 1, 1996

Before WILKINSON, Chief Judge, and LUTTIG and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

George V. Laughrun, II, GOODMAN, CARR, NIXON, LAUGHRUN & LEVINE, P.A., Charlotte, North Carolina; Randolph Marshall Lee, Charlotte, North Carolina, for Appellants. Mark T. Calloway, United States Attorney, Gretchen C.F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In these consolidated appeals, Carlos Emanuel Kinard (No. 94-5800) and Jermaine Maurice Padgett (No. 94-5799) appeal their jury convictions for various crimes related to their participation in a RICO conspiracy and several underlying predicate acts, as well as various drug and firearm offenses. Kinard and Padgett raise several arguments on appeal. They claim the Government failed to establish an interstate commerce nexus and that the evidence was insufficient to sustain their convictions. Padgett also claims the trial court incorrectly admitted several prior consistent statements, refused to allow his request to argue potential punishments to the jury, provided the jury with an incorrect definition of reasonable doubt, sentenced him under the standards for first degree murder, and subjected him to double jeopardy by sentencing him to the RICO conspiracy count and the conspiracy's underlying predicate acts. Finding no error, we affirm the convictions of both Appellants.

I.

The Government presented evidence of Kinard and Padgett's involvement in the "Flowe Organization," which was led by Angelo and David Flowe. The Organization sold and distributed cocaine base

2

in Charlotte, North Carolina through its several members--including Kinard and Padgett. Members of the Organization also committed various acts of violence in furtherance of the Organization's purpose, including robbery, assault, kidnapping, and murder. Several co-conspirators were indicted with Kinard and Padgett but accepted plea agreements and testified that Padgett helped kidnap Darryl Brown, who owed a drug debt to another member of the Flowe Organization. Padgett drove Brown to South Carolina, forced him to disrobe, and left him naked and stranded ("the kidnapping"). The Government's witnesses also testified that on another occasion, Padgett planned to purchase drugs from Steve Staton and Derrick Drakeford behind a car wash; instead of purchasing the drugs, Padgett killed Staton, and other Organization members killed Drakeford ("the car wash murders"). The witnesses also testified that on another occasion, Padgett and Kinard were involved in a robbery in which they kidnapped and assaulted several people, and Kinard killed Richard Wright ("the home invasion").

II.

Kinard and Padgett claim the Government failed to present sufficient evidence of an interstate commerce nexus to justify federal prosecution. This issue is reviewed de novo, as an interstate commerce nexus is "a `jurisdictional peg' on which to hang the federal prosecution." United States v. Darby, 37 F.3d 1059, 1067 (4th Cir. 1994), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3787 (U.S. May 1, 1995) (No. 94-7778). To meet the interstate commerce requirement, the government need not show that the defendant had knowledge of the interstate connection, id., or that the acts of racketeering themselves directly involved interstate commerce. United States v. Allen, 656 F.2d 964, 964 (4th Cir. 1981).

Kinard and Padgett stipulated that the firearms they used in each offense traveled through interstate commerce. We find this concession sufficient to establish the interstate commerce nexus.

III.

Kinard and Padgett claim the evidence was insufficient to sustain their convictions. Challenges to the sufficiency of the evidence are

3

reviewed by viewing the evidence in the light most favorable to the prosecution, including all reasonable inferences that can be drawn from the evidence. Glasser v. United States, 315 U.S. 60, 82 (1942); United States v. Russell, 971 F.2d 1098, 1109 (4th Cir. 1992), cert. denied, ___ U.S. ___, 61 U.S.L.W. 3479 (U.S. Jan. 11, 1993) (No. 92-6632). Additionally, it is within the sole province of the jury to assess the credibility of witness testimony, and this court will not question those assessments. Russell, 971 F.2d at 1109.

To establish a RICO claim under § 1959, the government must prove

> (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3627 (U.S. Feb. 21, 1995) (No. 94-7544). The defendant's general purpose for his crimes of violence also may be pecuniary gain. 18 U.S.C. § 1959(a) (West Supp. 1995).

A RICO enterprise is defined as "any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C.A. § 1959(b)(2) (West Supp. 1995). The enterprise can be formal or informal, and embody the concepts of continuity, unity, shared purpose and an identifiable structure. Fiel, 35 F.3d at 1003. Racketeering activity is defined as any act or threat involving murder, kidnapping, robbery and drug dealing. 18 U.S.C.A. § 1961(1) (West Supp. 1995).

The Government presented sufficient evidence that the Flowe Organization was a RICO enterprise engaged in racketeering activity. The Government's witnesses testified that the Organization was established by the Flowe brothers for the express and inferred purpose of selling and distributing cocaine base in the Charlotte area. The

4

Organization was a continuous enterprise that operated from 1989 until 1993, and each member had the shared purpose of profiting from the illegal drug sales.

Further, the Government presented sufficient evidence of the Flowe Organization's racketeering activities. The Government's witnesses testified that the kidnapping was carried out for the express purpose of persuading Darryl Brown to repay a drug debt, that the car wash murders were conducted for the express purpose of stealing cocaine and money from the victims, and that the home invasion was conducted with the desire to steal money from and harm a rival drug dealer.

Next, Kinard and Padgett also challenge the sufficiency of the evidence for proof of their motive to commit the violent acts. To establish motive, the Government must prove that Kinard and Padgett committed the acts of violence either to maintain or increase their positions in the Flowe Organization, or for pecuniary gain. 18 U.S.C.A. § 1959(a) (West Supp. 1995). The evidence established that Kinard and Padgett committed their acts of violence for pecuniary gain; both received money stolen from the victims of the home invasion, and Padgett received money stolen from the victims of the car wash murders. Additionally, while Padgett did not personally receive money from Darryl Brown, his kidnapping was motivated by a desire to force Brown's repayment of a drug debt owed to another Flowe Organization member.

Kinard also challenges the sufficiency of the evidence to convict him of conspiracy under 21 U.S.C. §§ 841(a)(1), 846 (1988). These statutes proscribe the manufacture, distribution, or possession of a controlled substance with the intent to manufacture, distribute or dispense, and the conspiracy thereof. A conspiracy exists when two or more people enter into an agreement to commit an unlawful act. United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992). The government must establish that a conspiracy existed, the defendant had knowledge of the conspiracy, and that the defendant voluntarily became a part of the conspiracy. Id. A defendant may be convicted of participation in a conspiracy if he enters it "with an understanding of the unlawful nature thereof and willfully joins in the plan one occasion . . . even though he played only a minor part." United States v.

5

Roberts, 881 F.2d 95, 101 (4th Cir. 1989). The testimony of co-conspirators, standing alone and uncorroborated, may provide a basis for conviction. United States v. Burns, 990 F.2d 1426, 1439 (4th Cir.), cert. denied, ___ U.S. ___, 61 U.S.L.W. 3819 (U.S. June 17, 1993) (No. 92-8621).

Here, the Government presented several witnesses/co-conspirators who testified that Kinard sold drugs for the Flowe Organization. Kinard and each co-conspirator had an express or implied agreement to sell and distribute cocaine. While Kinard challenges the credibility of these witnesses, that issue is not before the court, as witness credibility is an issue within the sole province of the jury. See Russell, 971 F.2d at 1109. Thus, the evidence was sufficient for a rational trier of fact to find Kinard guilty.

IV.

Padgett also raises several arguments concerning the trial and sentencing phases of his case. First, he challenges the admissibility of certain statements made by government witnesses that Padgett claims were improper prior consistent statements. As Padgett failed to raise this issue at trial, it is subject to the plain error standard of review. Issues raised for the first time on appeal are forfeited unless they constitute plain error. United States v. Olano, ___ U.S. ___, 61 U.S.L.W. 4421 (U.S. Apr. 26, 1993) (No. 91-1306); see also, Fed. R. Crim. P. 52(b). To constitute plain error, the claim (1) must be an error; (2) must be an error clear under current law; (3) must affect substantial rights to the extent that it affects the outcome of the trial; and (4) must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id.

A prior consistent statement may not be admitted unless it serves to rebut a recent charge of fabrication or improper motive. Fed. R. Crim. P. 801(d)(1)(B). Here, co-conspirators William Ray England and Larry McConneyhead testified to Padgett's involvement in the home invasion. The court then allowed Police Officer Scott Maxfield to read into evidence the statement England gave him upon arrest, which did not mention Padgett's name. Later, Police Investigator James Hollingsworth corroborated McConneyhead's testimony that he gave several people, including Padgett, the guns used in the home

6

invasion. Hollingsworth also testified that he took a statement from another government witness, but did not testify to the substance of that statement.

We need not address whether the police officers' testimony violated Rule 801, as any possible violation would not constitute plain error. The evidence against Padgett was voluminous, with witness testimony from his co-conspirators and the victims of his crimes. The witnesses placed Padgett at the scene of the home invasion, and recounted his actions during the event. Even without the contested testimony of the police officers, the remaining evidence was sufficient to support the jury's guilty verdict.

Padgett also claims the district court erred by refusing his request to argue potential punishments to the jury. However, a district court has broad discretion in managing closing arguments, especially when the arguments relate to the respective functions of the court and jury. See, e.g., People v. Ignacio, 852 F.2d 459, 462 (9th Cir. 1988). In the federal system, the court has exclusive authority over punishment; the jury's sole function is the determination of guilt or innocence. See United States v. Del Toro, 426 F.2d 181, 184 (5th Cir.), cert. denied, 400 U.S. 829 (1970). Thus, the district court did not abuse its discretion.

Padgett further claims that the district court erred by sentencing him to the predicate act of first degree murder and using that predicate act to establish the sentence for other offenses. Padgett claims that neither the indictment nor the jury charge specified a degree of homicide, and requests a rehearing for sentencing to determine the correct degree. Padgett did not raise this issue below; thus, it is subject to the plain error standard of review.

Padgett incorrectly describes the indictment and jury charge. The indictment stated that he was charged with racketeering activities, including "murder" as defined by N.C. Gen. Stat. § 14-17 (Michie 1993), which proscribes first and second degree murder. Additionally, the court's charge to the jury specifically referred to first degree murder. Further, the homicidal acts of Padgett and his co-conspirators satisfy the elements of first degree murder, which includes wilful, deliberate, and premeditated killing and homicide that occurs during

7

the commission of a felony. N.C. Gen. Stat. § 14-17 (Michie 1993). The evidence established that Padgett planned the car wash murders well in advance; additionally, the home invasion murder of Richard Wright occurred during the perpetration of a robbery.

Next, Padgett claims that the district court provided the jury with an incorrect definition of reasonable doubt. As he did not raise an objection at trial, this issue is reviewed for plain error.

Judicial efforts to define reasonable doubt are disfavored, absent a specific request from the jury. United States v. Headspeth, 852 F.2d 753, 755 (4th Cir. 1988). However, not all attempts to define reasonable doubt constitute reversible error per se. United States v. Moss, 756 F.2d 329, 333 (4th Cir. 1985). The disputed language must be viewed in the entire context of the jury charge. See Victor v. Nebraska, ___ U.S. ___, 62 U.S.L.W. 4179 (U.S. Mar. 22, 1994) (Nos. 92-8894, 92-9049).

Padgett claims the following instruction provided the jury with an incorrect definition of reasonable doubt:

> If the evidence is sufficient to overcome the presumption of innocence and to convince you beyond a reasonable doubt of the guilt of a defendant as to any charge, then it would be your duty to find him guilty of that charge; but if you have a reasonable doubt as to the guilt of a defendant on any charge, it would be your duty to give him the benefit of that doubt and acquit the defendant on that charge.
>
> The term "reasonable doubt" means just what it says. It is a doubt based upon reason and common sense. Its meaning is no doubt self-evidence and understood by you, and the Court will not attempt to define the term further.

This excerpt must be read in context with the entire jury charge, though, which also stated:

> [T]he law presumes a defendant to be innocent of crime, and this presumption continues throughout the course of the

8

> trial. It could come to an end only if you . . . arrive unanimously at the conclusion, if you do, that the government has shown to your satisfaction that a defendant is guilty beyond a reasonable doubt . . . . This burden on the government does not change at any time during the course of the trial. The presumption of innocence in favor of a defendant is not a mere formality to be disregarded by the jury at its pleasure, it is a substantive part of our criminal law.

When read in context with the entire jury charge, the district court's charge was not plainly erroneous.

Finally, Padgett also claims the district court subjected him to double jeopardy by indicting, convicting, and sentencing him to both the predicate acts underlying the RICO conspiracy count, and the conspiracy count itself. As Padgett failed to raise this issue below, it is subject to plain error analysis.

Padgett's claim is without merit. The prosecution and sentencing of a defendant to both RICO conspiracy and the predicate offenses does not violate double jeopardy. United States v. West, 877 F.2d 281, 292 (4th Cir.), cert. denied, 493 U.S. 959 (1989) (holding that offenses under 18 U.S.C.A. §§ 1962(c) and (d) do not constitute the same offense).

Accordingly, we affirm Kinard and Padgett's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9