**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6843

UNITED STATES OF AMERICA,

        Plaintiff – Appellant,

v.

JIMMY LEE ALLRED,

        Defendant – Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr. District Judge.  (2:94-cr-00175-WO-1)

Argued:  September 18, 2019               Decided:  November 7, 2019

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**ARGUED:**  Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Leza Lee Driscoll, LAW OFFICE OF LEZA LEE DRISCOLL, PLLC, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Brian A. Benczkowski, Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Criminal Division UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Matthew G.T. Martin, United States Attorney, Angela H. Miller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellant.

WILKINSON, Circuit Judge:

In 1995, a jury in the United States District Court for the Middle District of North Carolina found appellee Jimmy Lee Allred guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 264 months in prison under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 924(e). Just over twenty years later, in 2016, Allred filed a motion pursuant to 28 U.S.C. § 2255 protesting that his sentence was no longer valid because his predicate conviction for retaliation against a witness, see 18 U.S.C. § 1513(b)(1), did not qualify as an ACCA violent felony in light of the Supreme Court's decision in *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). The district court granted relief and subsequently resentenced Allred to a term of 120 months in prison with credit for time served. See *Allred v. United States*, 2018 WL 1936481 (M.D.N.C., April 24, 2018); J.A. 143-49. Because we hold that causing bodily injury to a witness under § 1513(b)(1) is categorically a violent ACCA felony, we reverse the judgment.

## I.

On June 16, 1994, Allred was arrested by local police outside a restaurant in Greensboro, North Carolina. Earlier that evening, a security guard at the restaurant had called the police after he observed Allred enter the restaurant with the outline of a firearm in his pants. When the police arrived, Allred left the restaurant and proceeded to a vehicle driven by a third party. As Allred entered the car, a police officer saw him place a firearm under the passenger's seat. The officer ordered both occupants out of the vehicle and, after finding a Glock semi-automatic handgun under the seat, placed Allred under arrest.

2

Because he was a convicted felon, Allred was charged in the Middle District of North Carolina with one count of possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). A jury found him guilty on February 16, 1995.

Typically, a conviction under § 922(g) carries a statutory maximum sentence of ten years in prison. See 18 U.S.C. § 924(a)(2). But if the defendant is considered an armed career criminal under the ACCA, then he is subject to a mandatory minimum sentence of fifteen years with a maximum of life imprisonment. 18 U.S.C. § 924(e)(1); see also *United States v. Vann*, 660 F.3d 771, 772 (4th Cir. 2011) (en banc) (per curiam). A defendant is an armed career criminal if he has three predicate convictions for either a "violent felony or a serious drug offense." *Id.* Allred's pre-sentence report listed three such predicate convictions: (1) a 1986 North Carolina state conviction for felony assault with a deadly weapon with intent to kill inflicting serious injury, (2) a 1990 North Carolina state conviction for felony possession with intent to sell and deliver cocaine, and (3) a 1990 federal conviction for retaliating against a witness in violation of 18 U.S.C. § 1513(b)(1).[*] Consequently, the district court found Allred to be an armed career criminal and sentenced him to 264 months in prison.

---

[*] Allred was actually found guilty of violating 18 U.S.C. § 1513(a)(1), but since his conviction that provision has been moved to § 1513(b)(1). Congress made no changes to the provision other than renumbering. See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 60017, 108 Stat. 1796, 1975. Thus, for ease of understanding, we will refer to Allred's conviction as being under § 1513(b)(1). Doing so has no effect on the substantive analysis because the text of the provision is exactly the same.

At the time of Allred's sentence, ACCA defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," (2) "is burglary, arson, or extortion, [or] involves [the] use of explosives," or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). These three provisions are often referred to as (1) the "force clause," also known as the "elements clause;" (2) the "enumerated clause;" and (3) the "residual clause," respectively. See *Stokeling v. United States*, 139 S. Ct. 544, 556 (2019). In *Samuel Johnson v. United States*, the Supreme Court held that the residual clause was unconstitutionally vague. 135 S. Ct. 2551, 2563 (2015). As a result, "the elements clause and the enumerated clause are now the only channels by which a prior conviction can qualify as an ACCA 'violent felony.'" *Stokeling*, 139 S. Ct. at 556.

The Supreme Court applied *Samuel Johnson* retroactively to cases on collateral review in *Welch v. United States*, 136 S. Ct. 1257 (2016). Allred thereafter filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Because Allred had already filed a § 2255 motion, he needed this court's authorization to file a second or successive motion. Finding that he had "made a prima facie showing that the new rule of constitutional law announced in [*Samuel Johnson*] . . . may apply to his case," we granted Allred the requisite authorization on May 5, 2016, thus permitting consideration of his motion by the district court. J.A. 68-69.

Allred's claim for relief focused solely on his federal conviction for witness retaliation under 18 U.S.C. § 1513(b)(1). In pertinent part, § 1513(b)(1) makes it a felony

4

punishable by up to ten years in prison to "knowingly engage[] in any conduct and thereby cause[] bodily injury to another person or damage[] the tangible property of another person, or threaten[] to do so, with intent to retaliate against any person for" being a witness or party in certain official proceedings. 18 U.S.C. § 1513(b)(1). For the purposes of § 1513, "bodily injury" is defined as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." 18 U.S.C. § 1515(a)(5).

The basis for Allred's § 2255 motion was that his conviction under § 1513(b)(1) no longer qualifies as a "violent felony" for ACCA purposes. Preliminarily, he argued that federal witness retaliation does not fall within the ambit of either the force or enumerated clauses. And because the government could no longer rely on the residual clause after *Samuel Johnson*, he concluded that it simply cannot count as a predicate offense under ACCA. Thus, Allred maintained that he has only two predicate convictions and was not properly subject to the ACCA sentence enhancement.

In response to Allred's motion, the government conceded that a conviction pursuant to § 1513(b)(1) cannot qualify as an ACCA predicate under the enumerated clause or the residual clause. But it nevertheless maintained that Allred's sentence was valid because his § 1513(b)(1) offense is a violent felony under the force clause.

The district court agreed with Allred. It held that Allred's conviction for witness retaliation was not a violent felony under the force clause. As a result, the court granted

5

Allred's requested relief and resentenced him to 120 months in prison with credit for time served.

The government appealed, challenging the district court's conclusion that witness retaliation under § 1513(b) is not a violent felony under the force clause.

II.

We begin by laying out the framework that governs our analysis of predicate offenses under ACCA. Whether an offense constitutes a "violent felony" and thus qualifies as a predicate conviction for purposes of ACCA is a question of law that we review de novo. *United States v. Cornette*, 932 F.3d 204, 207 (4th Cir. 2019).

At the outset, we must determine which of the two modes of analysis the Supreme Court has approved in this context applies to the instant case. Specifically, we must choose between the "categorical approach" and the "modified categorical approach." See *United States v. Hemingway*, 734 F.3d 323, 327 (4th Cir. 2013).

Where the criminal statute at issue is indivisible, that is it "sets out a single . . . set of elements to define a single crime," we are bound to apply the categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); see also *United States v. Winston*, 850 F.3d 677, 683 & n.5 (4th Cir. 2017). In that mode of analysis, we focus "only [on] the elements of the . . . offense and the fact of conviction, not [on] the defendant's conduct." *United States v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016). To qualify as a predicate offense under the categorical approach and ACCA's force clause, the offense itself "necessarily must have as an element the 'use, attempted use, or threatened use of physical

6

force against the person of another.'" *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (quoting 18 U.S.C. § 924(e)(2)(B)(i)).

In making that determination, we counterintuitively ignore whether the defendant's actual conduct involved such a use of force. *Doctor*, 842 F.3d at 308. Instead, we ask whether "the most innocent conduct that the law criminalizes" requires proof of the use, attempted use, or threatened use of force sufficient to satisfy the force clause. *United States v. Drummond*, 925 F.3d 681, 689 (4th Cir. 2019). If so, then the offense categorically qualifies as a violent felony; if not, then the opposite holds true. See *id.* at 689-91. Importantly, in undertaking this inquiry, "there must be a realistic probability, not a theoretical possibility," that the minimum conduct would actually be punished under the statute. *Id.* at 689 (quoting *Doctor*, 842 F.3d at 308); see also *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (noting that "our focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply 'legal imagination'" to the offense).

Alternatively, the modified categorical approach applies where the prior conviction at issue is for violation of a "divisible" statute. *Descamps v. United States*, 570 U.S. 254, 257 (2013). A divisible statute is one that "includes multiple 'alternative elements' that create different versions of the crime, at least one of which would qualify under the [force clause] and at least one of which would not." *Gardner*, 823 F.3d at 802. Where the statute of conviction lists potential elements in the alternative, it "renders opaque which element played a part in the defendant's conviction." *Descamps*, 570 U.S. at 260. Thus, under the modified categorical approach, the sentencing court is permitted to consult a limited set of record documents (such as the indictment, jury instructions, or plea agreement) for the sole

7

purpose of determining "what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249.

Two final points about the modified categorical approach bear noting. First, the approach "serves a limited function," namely to "help[] effectuate the categorical analysis" when the sentencing court is faced with a divisible statute. *Descamps*, 570 U.S. at 260. In other words, once the court has consulted the record and isolated the specific crime underlying the defendant's conviction, it must then apply the categorical approach to that crime to determine if it constitutes a violent felony. See *Chambers v. United States*, 555 U.S. 122, 127-29 (2009). It is still not permitted to consider the actual facts of the defendant's conviction to determine if they meet the requirements of the force clause.

Second, a statute is divisible only if it sets forth alternative *elements* and in doing so effectively creates "distinct crimes." *Gardner*, 823 F.3d at 802. If, on the other hand, the statute merely lists alternative *means* of committing a single offense, then it is indivisible and the categorical approach applies. *Id.*; see also *Mathis*, 136 S. Ct. at 2247-48, 2256-57. Elements, as contrasted with means, are the "constituent parts of a crime's legal definition" that the "prosecution must prove to sustain a conviction" and which "the jury must find beyond a reasonable doubt to convict the defendant." *Mathis*, 136 S. Ct. at 2248 (internal quotation marks omitted).

## III.

### A.

We begin by asking whether the categorical or modified categorical approach applies to Allred's conviction under § 1513(b)(1). As a threshold matter, all parties

8

acknowledge that § 1513(b)(1) is an alternatively phrased statute. It prohibits "caus[ing] bodily injury to another person *or* damag[ing] the tangible property of another person, *or* threaten[ing] to do so." 18 U.S.C. § 1513(b)(1) (emphasis added). When faced with an alternatively phrased statute, "[t]he first task" is "to determine whether its listed items are elements," thus rendering the statute divisible, "or means," thus rendering it indivisible. *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). Whether § 1513(b)(1) is divisible appears to be a question of first impression among the federal courts of appeals. See *United States v. Green*, 717 F. App'x 495, 496 (5th Cir. 2018) (noting as much).

Allred argues that the statute is indivisible so the categorical approach should govern. In other words, he contends that "causes bodily injury" and "damages . . . tangible property" are simply alternative means by which the government may prove a single offense. On Allred's view, since the categorical approach applies, his conviction for witness retaliation cannot constitute a violent felony under ACCA's force clause. If the statute were indivisible, the argument goes, it would permit conviction upon a showing that the defendant's conduct caused only property damage, and thus would not categorically have "as an element the use, attempted use, or threatened use of physical force *against the person of another*" required by the force clause. 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).

For its part, the government concedes that if the categorical approach applies then Allred's conviction under § 1513(b)(1) is not an ACCA predicate. See *United States v. Bowen*, 936 F.3d 1091, 1112-14 & n.5 (10th Cir. 2019). But it maintains that § 1513(b)(1) is divisible such that we should apply the modified categorical approach. On this view,

9

causing bodily injury and damaging tangible property are alternative elements of two different crimes. See *Descamps v. United States*, 570 U.S. 254, 263-64 (2013).

We think the government's position is correct. Section 1513(b)(1) easily divides into four separate general offenses: (1) engaging in conduct that causes bodily injury, (2) threatening to engage in conduct that causes bodily injury, (3) engaging in conduct that damages tangible property, and (4) threatening to engage in conduct that damages tangible property. Both the statute's plain text and other typical indicia of divisibility make this conclusion inescapable.

We start with the text. As the Supreme Court has observed, "the statute on its face may resolve the issue" of divisibility. *Mathis*, 136 S. Ct. at 2256. To begin with, § 1513(b) sets forth a disjunctive list of harms that constitute the prohibited conduct underlying the offense, namely "caus[ing] bodily injury" or "damag[ing] . . . tangible property." 18 U.S.C. § 1513(b). When a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible. See *United States v. Cornette*, 932 F.3d 204, 211-12 (4th Cir. 2019). Of course, the use of disjunctive language may not invariably answer the divisibility question, as the listed terms could simply be alternative means rather than alternative elements. *Id.* Thus, we may parse the terms themselves to determine which they represent.

In *Chambers v. United States*, the Supreme Court explained that "[t]he nature of the behavior that likely underlies a statutory phrase matters" to the divisibility analysis. 555 U.S. 122, 126 (2009). Where the behavior underlying one statutory phrase "differs so significantly from the behavior underlying" another, "for ACCA purposes a sentencing court must treat the two as different crimes." *Id.*; see also *United States v. Rivers*, 595 F.3d

10

558, 564 (4th Cir. 2010) ("[A]fter *Chambers*, the modified categorical approach most naturally applies to statutes which proscribe *different types of behavior*") (emphasis added).

For an example of a statute that was divisible because it criminalized two different types of behavior, the *Chambers* Court considered its previous holding in *Shepard v. United States*, 544 U.S. 13 (2005). *Shepard* involved a Massachusetts burglary statute that "placed within a single, separately numbered statutory section," *Chambers*, 555 U.S. at 126, the burglary of a "building, ship, vessel or vehicle," *id.* (quoting Mass. Gen. Laws Ann., ch. 266, § 16 (West 2008)). The Court found this statute to be divisible because the behavior underlying breaking and entering each of the listed premises "differ[ed] so significantly" from one to the other. *Id.* (citing *Shepard*, 544 U.S. at 16-17). Likewise, in *United States v. Vinson*, we relied on *Chambers* to hold that a North Carolina assault statute was divisible because assault could be proven by "an attempted use of force; a show of violence without even an attempted use of force; and a completed, nonconsensual use of force." 794 F.3d 418, 425 (4th Cir. 2015). Since "each formulation of the crime involves a different type of conduct," we concluded that they "should be treated as separate crimes warranting the use of the modified categorical approach." *Id.*

Applying *Chambers* to the instant case, we have no trouble in concluding that § 1513(b) sets forth alternative elements and thus creates separate crimes. Put simply, the behavior typically underlying the causation of bodily injury "differs so significantly" from that underlying damage to property that those statutory phrases cannot plausibly be considered alternative means. *Chambers*, 555 U.S. at 126. The former is concerned with conduct threatening bodily integrity and safety, while the latter deals only with damage to

11

physical possessions. Congress's decision to employ different verbs to characterize each of the proscribed harms (i.e., "*causes*" bodily injury versus "*damages*" tangible property) bolsters this conclusion. In sum, "the radically distinct natures of the above two proscribed acts require that they be treated as different crimes for ACCA purposes." *United States v. Vann*, 660 F.3d 771, 800 (4th Cir. 2011) (en banc) (Keenan, J., concurring).

In addition to the text of the statute at issue, we may consult extrinsic sources to reach a conclusion with respect to divisibility. For example, because elements are those "factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt," we "may consider how courts generally instruct juries with respect to that offense." *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016) (internal quotations omitted); see also *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013). Virtually all of the model jury instructions we have found for § 1513(b) plainly contemplate that the jury be instructed regarding either bodily injury or damaging tangible property, not both. See Third Circuit Model Criminal Jury Instructions, 6.18.1513B (2014); Eighth Circuit Model Criminal Jury Instructions, 6.18.1513 (2017). And the few historical jury instructions that appear in the caselaw are likewise focused solely on one of the two variants. See, *e.g.*, *United States v. Cummiskey*, 728 F.2d 200, 207 (3d Cir. 1984) (approving jury instructions where the district court "charged that the jury must find whether 'these defendants actually engaged in conduct which threatened to cause bodily injury.'").

Beyond jury instructions, we also consider how the offense has historically been charged. *United States v. Marshall*, 747 F. App'x 139, 150 (4th Cir. 2018). As the

12

Supreme Court noted in *Descamps*, "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." 570 U.S. at 272 (citing *The Confiscation Cases*, 87 U.S. (20 Wall.) 92, 104 (1874)). Thus, "when a charging document reiterates all the terms of [the statute], that is an indication that each alternative is only a possible means of commission." *United States v. Jones*, 914 F.3d 893, 901 n.8 (4th Cir. 2019) (internal quotation marks and alteration omitted). On the other hand, if federal prosecutors typically select and charge only one of the statutory alternatives in § 1513(b), that suggests those alternatives are elements rather than means.

The government claims it does just that, specifically that it "often charges defendants with the bodily injury offense alone." Gov't Br. at 12. Allred does not seriously contest this assertion, and a review of both caselaw and historical indictments reveals its accuracy. See, *e.g.*, *United States v. Bullock*, 603 F. App'x 157, 160 (4th Cir. 2015) (indictment alleged that defendant "cause[d] bodily injury to another person" in violation of § 1513(b)(1)); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (same); see also Superseding Indictment at 1, *United States v. Pettaway*, No. 09-cr-17 (E.D. Va. Jan. 13, 2010) (charging defendant with "knowingly threaten[ing] to cause death or bodily injury to" the victim)).

Finally, in previous cases, we have specifically articulated the elements of a § 1513(b)(1) offense in a manner that demonstrates the bodily injury and property damage variants are "fully functioning, stand-alone, alternative definitions of the offense itself," *Vinson*, 794 F.3d at 426 (emphasis omitted), rather than merely alternative means by which a single offense can be committed, see, *e.g.*, *United States v. Cofield*, 11 F.3d 413, 419 (4th

13

Cir. 1993) (listing "[t]he elements of an offense under 18 U.S.C. § 1513" as "(1) knowing engagement in conduct (2) either causing, or threatening to cause, bodily injury to another person (3) with the intent to retaliate for, *inter alia*, the attendance or testimony of a witness at an official proceeding."). Many of our sister circuits have done the same. See, *e.g.*, *United States v. Henderson*, 626 F.3d 326, 342 (6th Cir. 2010) ("The elements of an offense under 18 U.S.C. § 1513 are (1) knowing engagement in conduct (2) either causing, or threatening to cause, bodily injury to another person (3) with the intent to retaliate for, *inter alia,* the attendance or testimony of a witness at an official proceeding."); *United States v. Wardell*, 591 F.3d 1279, 1291 (10th Cir. 2009) (same).

And if all that were not enough, the indictment charging Allred himself with witness retaliation confirms beyond doubt that the statute is divisible. In *Mathis*, the Supreme Court authorized us to take a "peek" at the record documents "for the sole and limited purpose of determining whether [the listed statutory alternatives are] element[s] of the offense." *Mathis*, 136 S. Ct. at 2256-57 (internal quotation marks omitted). Specifically, if the indictment "referenc[es] one alternative term to the exclusion of all others," that "indicate[s]" that "the statute contains a list of elements, each one of which goes towards a separate crime." *Id.* at 2257. Allred's indictment does exactly that; it charged him with "knowingly engag[ing] in conduct and thereby caus[ing] bodily injury to Monica Michelle Warner, with intent to retaliate against Monica Michelle Warner for attendance as a witness and testimony given in an official proceeding." J.A. 16. The fact that only the bodily injury variant was charged in Allred's indictment indicates it is an alternative element comprising a wholly separate crime from the property damage variant.

14

Because § 1513(b)(1) sets forth alternative elements by which witness retaliation may be committed and is thus divisible, we must apply the modified categorical approach to determine which of the alternative crimes formed the basis for Allred's conviction. See *Descamps*, 570 U.S. at 257. To do so, we once again look to Allred's indictment. *Mathis*, 136 S. Ct. at 2249. As discussed above, this plainly reveals that Allred was charged with violating the variant of § 1513(b)(1) that criminalizes knowing engagement in conduct that causes bodily injury. See J.A. 16.

B.

Having determined that Allred was found guilty of the bodily injury variant of § 1513(b)(1), the final question we must confront is whether that conviction categorically qualifies as a crime of violence under ACCA's force clause. We hold that it does.

As previously discussed, a prior felony offense that does not match any of the crimes in the enumerated clause qualifies as a "violent felony" for purposes of ACCA only if it meets the requirements of the force clause. *Stokeling v. United States*, 139 S. Ct. 544, 556 (2019). In other words, it must have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

The Supreme Court has expounded on the force clause's definition of violent felony in two ways that are pertinent to this case. First, the term "physical force" has been interpreted to mean "*violent* force," that is, "force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010). A mere "offensive touching," of the sort sufficient to sustain a prosecution for battery at common law, does not amount to "violent force" under the force clause. *Id.* at 139-40. Second, the

15

term "use" has been interpreted to require "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); see also *United States v. McNeal*, 818 F.3d 141, 154-55 (4th Cir. 2016) (noting that while the Supreme Court "reserved the question of whether a reckless application of force could qualify as a 'use' of force, [this court] answered that question . . . by ruling recklessness was not enough."). Thus, an offense will not have as an element the "use" of force sufficient to qualify as a violent felony if it does not have the requisite level of mens rea.

In *United States v. Castleman*, 572 U.S. 157 (2014), the Supreme Court considered whether the defendant's prior state law conviction for having "intentionally or knowingly cause[d] bodily injury to" the mother of his child qualified as "a misdemeanor crime of domestic violence" ("MCDV") under 18 U.S.C. § 922(g)(9). *Id.* at 159. Much like under the ACCA force clause, to qualify as a MCDV, the defendant's predicate offense must have, *inter alia*, "as an element, the use or attempted use of physical force." *Id.* at 161 (quoting 18 U.S.C. § 921(a)(33)(A)). In holding that Castleman's state law conviction counted as an MCDV, the Supreme Court announced several principles applicable to this case.

First, the *Castleman* Court firmly concluded that the term "use . . . of physical force" includes both direct and indirect applications of force. *Castleman*, 572 U.S. at 170-71. Second, the Court recognized that "the knowing or intentional causation of bodily injury *necessarily* involves the use of physical force." *Id.* at 169 (emphasis added). But because the Court held that the MCDV force clause could be satisfied by a "mere offensive touching," *id.* at 167, it left open the question whether every knowing or intentional

16

causation of bodily injury necessarily involves the use of "violent force" sufficient to constitute a violent felony under ACCA, *id.* at 170; see also *United States v. Reid*, 861 F.3d 523, 528 (4th Cir. 2017) (noting that *Castleman* "expressly reserved the question of whether the causation of 'bodily injury' . . . would 'necessitate violent force under [*Curtis*] *Johnson*'s definition of that phrase' in ACCA." (quoting *Castleman*, 572 U.S. at 170)).

With the teachings of *Castleman* in mind, we now analyze the argument made by Allred that his conviction under § 1513(b)(1) does not constitute a violent felony under ACCA's force clause. Preliminarily, to the extent that Allred continues to rely on a distinction between direct and indirect force, see *United States v. Torres-Miguel*, 701 F.3d 165, 168-69 (4th Cir. 2012), such arguments must be rejected. See *United States v. Covington*, 880 F.3d 129, 134 (4th Cir. 2018) ("[T]his Court has confirmed and reaffirmed in several decisions that the direct versus indirect use of force distinction articulated in *Torres-Miguel* has been abrogated by *Castleman*."). In *Reid*, we concluded that "ACCA's phrase 'use of physical force' includes force applied directly or indirectly." 861 F.3d at 529. Thus, it is of no moment whether a conviction for witness retaliation causing bodily injury under § 1513(b)(1) could be accomplished using only indirect force, as indirect force counts as "physical force" under ACCA.

*Castleman* did not, however, "abrogate the causation aspect of *Torres-Miguel* that a crime may *result* in death or serious injury without involving the *use* of physical force." *Covington*, 880 F.3d at 134 n.4 (internal quotation marks omitted). This part of *Torres-Miguel* dealt with the requirement that a crime include a heightened mens rea in order to involve the "use" of physical force. *Castleman* did nothing to disturb this portion of force

17

clause jurisprudence. If anything, *Castleman* reemphasized the importance of mens rea requirements in determining whether a given offense involves the "use" of physical force. See, *e.g.*, *Castleman*, 572 U.S. at 169 (holding that "the *knowing or intentional* causation of bodily injury necessarily involves the use of physical force.") (emphasis added); *id.* (noting that "the merely reckless causation of bodily injury" under a related state statute "may not be a 'use' of force."); see also *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) ("*Castleman* teaches us that the requisite mens rea is crucial in the force analysis.").

The logic of *Torres-Miguel* and later of *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018), thus extends to those offenses that can be committed innocently, negligently, or recklessly. See *Battle*, 927 F.3d at 166 (noting that those cases "appl[y] only where a crime does not have as an element the intentional causation of death or injury."); *United States v. Shepard*, 741 F. App'x 970, 972 (4th Cir. 2018) ("*Middleton* stands for the proposition that *unintentionally* causing physical force to harm someone is not necessarily 'a use of violent physical force against the person of another.'") (emphasis added). For example, in *Middleton* itself, we held that a conviction for involuntary manslaughter under South Carolina law did not categorically qualify as a violent felony because it could be committed with "*reckless* disregard for the safety of other[s], which falls short of *knowingly* causing harm." 883 F.3d at 492 (internal quotation marks omitted).

The offense at issue here is very different. Although there is no mens rea specified for the element of causation, the statute contains not one, but *two* heightened mens rea requirements. Specifically, to find Allred guilty, the jury was required to agree that he

18

"*knowingly* engage[d]" in conduct with the specific "*intent* to retaliate against" a witness and thereby "cause[d] bodily injury" to another person. 18 U.S.C. § 1513(b)(1) (emphasis added). We find it difficult to imagine a realistic scenario in which a defendant would knowingly engage in conduct with the specific intent to retaliate against a witness and thereby only recklessly or negligently cause bodily injury. And any imaginative hypothetical that could conceivably illustrate this scenario would present no "realistic probability" of prosecutable misconduct under § 1513(b)(1). *United States v. Drummond*, 925 F.3d 681, 689 (4th Cir. 2019) (quoting *Doctor*, 842 F.3d at 308). Indeed, the parties have not pointed to any case in which a defendant was prosecuted under § 1513(b)(1) for reckless or negligent causation of bodily injury.

Intentional retaliation causing bodily injury thus necessitates the use of violent force under *Curtis Johnson*'s definition of that phrase. By analogy, a statute that has as an element the intentional or knowing causation of bodily injury categorically requires the use of "force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140; see also *Castleman*, 572 U.S. at 174 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result."). Our precedents have stated as much. See, *e.g.*, *Battle*, 927 F.3d at 166 ("[A] crime requiring the 'intentional causation' of injury requires the use of physical force" within the meaning of ACCA); *Covington*, 880 F.3d at 133-34. And numerous sister circuits have held the same. See, *e.g.*, *United States v. Jennings*, 860 F.3d 450, 457 (7th Cir. 2017) (noting that "any number of forceful acts beyond simple touching may . . . inflict bodily harm upon a victim" and concluding that "[s]uch acts qualify as

19

violent force in the sense that they have the capacity to inflict physical pain."); *United States v. Winston*, 845 F.3d 876, 878 (8th Cir. 2017) (rejecting a defendant's "effort to show daylight between physical injury and physical force"); see also *United States v. Ontiveros*, 875 F.3d 533, 538 (10th Cir. 2017) (same).

The statute at issue here, 18 U.S.C. § 1513(b)(1), emphasizes intentionality throughout, not inadvertence, negligence, or recklessness. And the whole point of a defendant's intentional misconduct was to retaliate against someone for his or her participation as "a witness or party at an official proceeding." 18 U.S.C. § 1513(b)(1). And the bodily harm, consequent to such knowing conduct, was most certainly not of the trivial or nominal sort. See 18 U.S.C. § 1515(a) (defining the term "bodily injury" for the purposes of § 1513 as involving, *e.g.*, "disfigurement," "physical pain," or "impairment of the function of a bodily member [or] organ."). For in realistic terms, one would hardly go to the trouble of knowingly retaliating in such a manner that causes serious bodily injury to another without knowing or intending to inflict upon that person far more than a mere touch or scratch. See *Reid*, 861 F.3d at 529 (holding that a statute requiring "that the defendant 'knowingly and willfully inflict bodily injury' on the victim . . . falls within ACCA's definition of a violent felony"); see also *United States v. Burns-Johnson*, 864 F.3d 313, 318 (4th Cir. 2017) (same); *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017) (same).

In light of the foregoing, Allred's conviction under § 1513(b)(1), which requires knowing conduct that causes bodily injury to another, categorically involves the "use" of "violent force" sufficient to bring it within ACCA's elements clause.

IV.

20

Because the district court held otherwise, we reverse its judgment and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.