**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-4019**

─────────────

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

　　v.

AARON ALBERT GOODE,

　　　　　Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:21-cr-00334-D-1)

─────────────

Argued:  March 20, 2026　　　　　　　　　　　　　Decided:  June 5, 2026

─────────────

Before KING, WYNN, and RUSHING, Circuit Judges.

─────────────

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge King and Judge Rushing joined.

─────────────

**ARGUED:**  Stephen J. van Stempvoort, MILLER JOHNSON, Grand Rapids, Michigan, for Appellant.  Katherine Simpson Englander, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** W. Ellis Boyle, United States Attorney, Lucy Partain Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

─────────────

WYNN, Circuit Judge:

The Armed Career Criminal Act ("ACCA") authorizes enhanced penalties where a defendant's prior convictions qualify as violent felonies within the meaning of 18 U.S.C. § 924(e). Aaron Albert Goode argues on appeal that one of his predicate convictions— North Carolina second-degree murder—does not qualify as a "violent felony" under the ACCA.

In response, the Government initially defended the merits of this challenge, only raising the issue of Goode's appeal waiver in a subsequent filing. Because the Government elected to litigate the merits of this appeal first, its subsequent reliance on the appeal waiver was forfeited.

Nevertheless, upon review of the merits of Goode's argument, we conclude that second-degree murder categorically qualifies as a violent felony. Accordingly, we affirm Goode's sentence.

I.

A.

In 2021, Goode pleaded guilty under a written plea agreement to three counts: conspiracy to distribute heroin, cocaine, and fentanyl, *see* 21 U.S.C. §§ 841(b)(1)(A), 846; possession with intent to distribute fentanyl, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C); and unlawful possession of a firearm by a felon, *see* 18 U.S.C. § 922(g)(1). As part of his plea agreement, Goode agreed to waive his right to appeal the convictions or his sentence on any ground other than ineffective assistance of counsel or prosecutorial misconduct.

2

Before sentencing, the U.S. Probation Office prepared a presentence investigative report. Goode's conviction under 18 U.S.C. § 922(g) prompted analysis under the ACCA, which mandates a minimum sentence of fifteen years for any person who violates § 922(g) and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The Probation Office determined that three of Goode's prior North Carolina convictions qualified as violent felonies under the ACCA: a conviction for two counts of robbery with a dangerous weapon, a later conviction for robbery with a dangerous weapon, and a conviction for second-degree murder.

Goode filed several objections to the presentence report, but he withdrew all the objections at sentencing, and the district court accepted the report as accurate. With the parties' agreement, the district court calculated Goode's total offense level at 43, criminal history category at VI, and the advisory guideline range at life imprisonment. The district court sentenced Goode to 360 months' imprisonment: 360 months for the drug-conspiracy offense, 360 months for the unlawful possession of a firearm by a felon offense, and 240 months for the drug-possession offense, all to run concurrently.

Goode timely appealed.

B.

Goode's appeal initially stated two grounds for relief. First, he argued that his North Carolina second-degree murder conviction was not categorically a violent felony under the ACCA. Second, he argued that his conviction for possession of a firearm by a felon was unconstitutional under the Second Amendment.

3

In response, the Government filed a motion to dismiss in part and for summary affirmance. The Government moved to dismiss Goode's Second Amendment challenge as within the scope of his appeal waiver. It did not move to dismiss Goode's ACCA challenge, instead moving for summary affirmance and arguing that Goode could not satisfy plain error review. We granted the motion in part, dismissing Goode's Second Amendment challenge but deferring action on the motion for summary affirmance until briefing was complete.

The Government then moved for leave to file an out-of-time motion to dismiss Goode's remaining ACCA challenge as within the scope of his appeal waiver. We deferred action on the motion for leave until briefing was complete.

Thus, we now consider the two pending motions and the undismissed portion of the appeal itself. Together, they present two issues: (1) whether the Government forfeited its right to assert the appeal waiver by moving for summary affirmance and (2) if so, whether Goode's sentencing challenge under the ACCA prevails.

II.

First, we consider whether the Government forfeited its right to invoke the appeal waiver when it initially attempted to defeat Goode's ACCA claim by moving for summary affirmance. We conclude that it did.

A.

The parties do not dispute the validity of the plea agreement, and "[w]e have consistently held that appellate waivers in valid plea agreements are enforceable." *United States v. Soloff*, 993 F.3d 240, 243 (4th Cir. 2021). Thus, "[w]here the Government seeks

4

to enforce an appeal waiver and the defendant has not alleged a breach of the plea agreement, we will enforce a valid appeal waiver where the issue being appealed is within the scope of the waiver." *Id.* (quoting *United States v. McGrath*, 981 F.3d 248, 250 (4th Cir. 2020)).

Nevertheless, the Government may forfeit its right to assert the waiver. Appeal waivers within plea agreements "rest on contractual principles," and thus each party "should receive the benefit of their respective bargain." *United States v. Poindexter*, 492 F.3d 263, 270 (4th Cir. 2007) (quoting *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993)). If the Government does not seek to enforce an appeal waiver, this Court "will not sua sponte enforce it." *United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012). Thus, "even a waived appellate claim can still go forward if the prosecution forfeits or waives the waiver." *Garza v. Idaho*, 586 U.S. 232, 238–39 (2019).

When a defendant appeals and files a merits brief,[1] the Government has three options: "(1) raise the appeal waiver issue and argue that the appeal should be dismissed based on the waiver; (2) assert that it is no longer bound by the plea agreement because the defendant's appeal amounts to a breach of that agreement; or (3) decline to rely on the appeal waiver and address the merits." *Poindexter*, 492 F.3d at 271. If the Government chooses the third option "by failing to raise the issue of waiver . . . and instead addressing the merits," then "it is foreclosed from changing tactics" later. *United States v. Hairston*,

---

[1] This appeal involves a merits brief, rather than an *Anders* brief. We have explained that the Government has two options if an *Anders* brief is filed: "file a responsive brief raising the waiver issue (if applicable) or do nothing, allowing this court to perform the required *Anders* review." *Poindexter*, 492 F.3d at 271.

754 F.3d 258, 260 (4th Cir. 2014). For example, the Government "fail[s] to vindicate [its] interest" in the appeal waiver when it agrees with a defendant's assertion of the appropriate standard of review without raising the issue of the waiver. *United States v. Metzger*, 3 F.3d 756, 757 (4th Cir. 1993).

Here, the Government chose to address the merits of Goode's ACCA challenge without asserting the issue of the appeal waiver when it moved for summary affirmance. The Government agreed with Goode that the applicable standard of review was plain error, and it proceeded to argue for affirmance under the substantial-rights prong of that analysis. Indeed, the Government concedes that it did not timely assert the appeal waiver when it instead moved for summary affirmance. Oral Arg. at 14:26–48, https://www.ca4.uscourts.gov/OAarchive/mp3/24-4019-20260320.mp3. Therefore, the Government forfeited its right to assert Goode's appeal waiver and is now "foreclosed from changing tactics." *Hairston*, 754 F.3d at 260.

### B.

Still, the Government argues that we should excuse any forfeiture due to this Court's intervening decision in *United States v. Lubkin*, 122 F.4th 522 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1910 (2025). We disagree.

We have not yet considered whether to apply the intervening-law exception to forfeiture in this context—that is, when the government fails to timely raise an appeal waiver. Generally, however, we have excused waiver or forfeiture "when there has been an intervening change in the law recognizing an issue that was not previously available." *Holland v. Big River Mins. Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) (considering the

6

failure to timely raise a constitutional challenge); *see, e.g.*, *Edd Potter Coal Co., Inc. v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202, 211–12 (4th Cir. 2022) (considering the failure to exhaust administrative remedies); *United States v. Chittenden*, 896 F.3d 633, 639–40 (4th Cir. 2018) (excusing the failure to challenge joint and several forfeiture liability when previous controlling law had foreclosed the argument). We may excuse forfeiture when "'there was strong precedent' prior to the change, such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner." *Holland*, 181 F.3d at 605–06 (quoting *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143 (1967) (plurality opinion)).

The Government argues that our decision in *Lubkin* was a relevant intervening change in the law because it clarified the application of our earlier decision in *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992). The Government argues that it mistakenly believed that Goode's ACCA challenge would fall within an exception to the scope of appeal waivers that we articulated in *Marin*. Had *Lubkin* existed when it moved for summary affirmance, the Government claims, it would have also asserted the appeal waiver. We first review the relevant cases.

In *Marin*, we held that defendants cannot waive their "right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute." *Marin*, 961 F.2d at 496. An appeal on that ground "survive[s] an appellate waiver" because "the sentence is alleged to have been beyond the authority of the district court to impose." *United States v. Thorsbury*, 670 F.3d 532, 539 (4th Cir. 2012); *see United States v. Blick*, 408 F.3d 162,

7

171 (4th Cir. 2005) (explaining that we have applied the principle in *Marin* to a "narrow class of claims" (quotation omitted)).

We applied the *Marin* exception to a sentencing challenge under the ACCA in *United States v. Cornette*, 932 F.3d 204 (4th Cir. 2019). There, we explained that a pair of decisions[2] from the Supreme Court meant that "all sentences rendered under the residual clause became unconstitutional," and thus those defendants' sentences were imposed "in excess of the maximum penalty provided by" the ACCA. *Id.* at 209 (quoting *Marin*, 961 F.2d at 496).

But in *Lubkin*, we held that the *Marin* exception did not apply "[o]n its face" to an appeal challenging whether a predicate offense was categorically a violent felony under the ACCA. *Lubkin*, 122 F.4th at 528. That type of challenge, we explained, does not dispute the validity of the relevant ACCA provision and does not argue that the district court "was stripped of its statutory authority to sentence defendants with predicate drug offenses under the ACCA." *Id.* at 529. We thus declined "to expand our exception for 'illegal' sentences so broadly." *Id.*

This review reveals no "strong precedent" that foreclosed an earlier assertion of the appeal waiver. *Holland*, 181 F.3d at 605 (quotation omitted). Neither *Marin* nor *Cornette* held that a district court exceeds its authority if it erroneously categorizes an ACCA-

---

[2] Those cases were *Johnson v. United States*, 576 U.S. 591 (2015), which held that the residual clause of the ACCA was unconstitutional, and *Welch v. United States*, 578 U.S. 120 (2016), which held that *Johnson*'s holding applied retroactively.

8

predicate offense as a violent felony. Indeed, it is difficult to call *Lubkin*, a decision that declined to expand the *Marin* exception, a "change" in the law at all.

Clearly, before *Lubkin*, the Government believed that asserting the appeal waiver in this case would be a losing strategy. As evidenced by *Lubkin*, it was mistaken. But a chance at losing is insufficient to show that, before a change in law, an argument "was not previously available." *Holland*, 181 F.3d at 605.

Thus, because the Government was not foreclosed from raising the issue but nevertheless declined to do so, it has forfeited its right to assert the appeal waiver. We deny the Government's motion for leave to file an out-of-time motion to dismiss.

III.

Accordingly, we consider the merits of Goode's argument—whether his North Carolina second-degree murder conviction is categorically a "violent felony" under the ACCA.

Because Goode "concededly did not raise this objection to the district court, our review is for plain error only." *United States v. Nelson*, 37 F.4th 962, 966 (4th Cir. 2022) (citing Fed. R. Crim. P. 52(b)). To establish plain error, a defendant must show that "(1) an error was made, (2) the error was plain, and (3) the error affected his substantial rights." *Id.* Even then, relief "is permissive, not mandatory." *United States v. Olano*, 507 U.S. 725, 735 (1993). Thus, we will exercise our discretion and correct the error only if failing to do so "would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Green*, 996 F.3d 176, 185 (4th Cir. 2021) (quotation omitted).

9

We first address whether the district court committed an error by treating Goode's second-degree murder conviction as a violent felony. Because we conclude that it did not, we do not address the remaining prongs of the plain-error analysis.[3]

A.

As relevant here, the ACCA defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). This is known as the "elements clause" (or the "force clause").[4] *United States v. Allred*, 942 F.3d 641, 646 (4th Cir. 2019).

To determine whether a prior offense satisfies the elements clause, "we apply the categorical approach, which examines the *elements* of the offense only, not the defendant's conduct when committing the offense." *United States v. Hamilton*, 95 F.4th 171, 173–74

---

[3] For the same reason, we also deny as moot the Government's motion for summary affirmance, which was based on the substantial-rights prong of the plain-error analysis.

[4] These two terms emerged from the similar definitions of "crime of violence" under § 924(c) and "violent felony" under § 924(e). *Compare* 18 U.S.C. § 924(c)(3)(A) (defining a crime of violence as having "as an element the use, attempted use, or threatened use of physical force against the person or property of another"), *with* 18 U.S.C. § 924(e)(2)(B)(i) (defining a violent felony as having "as an element the use, attempted use, or threatened use of physical force against the person of another"). We have used "elements clause" and "force clause" interchangeably in both statutory contexts. *See United States v. Draven*, 77 F.4th 307, 311 n.2 (4th Cir. 2023) (noting usage in the § 924(c) context); *United States v. Allred*, 942 F.3d 641, 646 (4th Cir. 2019) (noting usage in the § 924(e) context). The Supreme Court has used the "elements clause" in recent years, and we do so here. *See, e.g.*, *United States v. Taylor*, 596 U.S. 845, 848 (2022) (interpreting § 924(c)); *Borden v. United States*, 593 U.S. 420, 424 (2021) (interpreting § 924(e)); *Stokeling v. United States*, 586 U.S. 73, 77 (2019) (interpreting § 924(e)); *United States v. Davis*, 588 U.S. 445, 449 (2019) (interpreting § 924(c)); *Welch v. United States*, 578 U.S. 120, 123 (2016) (interpreting § 924(e)).

10

(4th Cir. 2024). The defendant's actual conduct is irrelevant to our analysis. *Allred*, 942 F.3d at 648. Instead, we focus on "the minimum conduct required to commit the offense," asking whether the "statutory elements *necessarily* require the use, attempted use, or threatened use of physical force." *Hamilton*, 95 F.4th at 174 (quoting *United States v. Mack*, 56 F.4th 303, 305 (4th Cir. 2022)); *see United States v. Shell*, 789 F.3d 335, 339 (4th Cir. 2015) (looking to "the most innocent conduct"). If we see "a realistic probability that the state would apply the statute" to conduct outside of the elements clause, "then the offense is not categorically a 'violent felony.'" *Hamilton*, 95 F.4th at 174 (quoting *United States v. Jones*, 914 F.3d 893, 901 (4th Cir. 2019)).

The Supreme Court has repeatedly explored the meaning of the "use of physical force against the person of another" within the ACCA. 18 U.S.C. § 924(e)(2)(B). It has explained that "physical" force is "exerted by and through concrete bodies," rather than through "intellectual force or emotional force." *United States v. Johnson*, 559 U.S. 133, 138 (2010). The "force" described is a "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. And a person may "use" physical force through indirect means, such as poison, *United States v. Castleman*, 572 U.S. 157, 170–71 (2014), or through a deliberate omission, *Delligatti v. United States*, 604 U.S. 423, 433–35 (2025).

But this "use" must also "have the requisite level of mens rea." *Allred*, 942 F.3d at 652. In *Borden v. United States*, the Supreme Court held that the elements clause "covers purposeful and knowing acts, but excludes reckless conduct." 593 U.S. 420, 432 (2021). The *Borden* Court reserved for a future case the question of whether mental states between

11

recklessness and knowledge, such as "depraved heart" or "extreme recklessness," would fall within the elements clause. *Id.* at 429 n.4.

This Court answered that question in *United States v. Manley*, 52 F.4th 143 (4th Cir. 2022).[5] There, we applied the principles in *Borden* and held that a crime involving "extreme recklessness" can fall within the elements clause.[6] *Id.* at 151. We explained that Virginia's second-degree murder offense met this mens rea requirement by requiring malice, which "encapsulates a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice." *Id.* at 150 (quoting *Watson-Scott v. Commonwealth*, 835 S.E.2d 902, 904 (Va. 2019)). By requiring malice, we reasoned, Virginia's second-degree murder statute necessitates a level of culpability that "comes close" to the "practically certain state of knowing." *Id.* at 151 (cleaned up).

## B.

Goode argues that North Carolina's second-degree murder statute is "unusually broad" and thus is distinguishable from the Virginia statute we considered in *Manley*. Opening Br. at 12. We disagree.

---

[5] *Manley* was interpreting § 924(c)'s definition of "crime of violence," but that definition is "materially similar" to § 924(e)'s definition of "violent felony," and we interpret them in parallel. *Manley*, 52 F.4th at 145.

[6] Our peer circuits have consistently come to the same conclusion. *See, e.g.*, *United States v. Báez-Martínez*, 950 F.3d 119, 125–27 (1st Cir. 2020); *United States v. Delgado*, 149 F.4th 244, 247 (2d Cir. 2025); *United States v. Harrison*, 54 F.4th 884, 889 (6th Cir. 2022); *Janis v. United States*, 73 F.4th 628, 633–34 (8th Cir. 2023); *United States v. Begay*, 33 F.4th 1081, 1096 (9th Cir. 2022) (en banc); *United States v. Kepler*, 74 F.4th 1292, 1303–04 (10th Cir. 2023); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1343–44, 1348 (11th Cir. 2022).

When we apply the categorical approach to a state-law offense, "we are 'bound by the interpretation of such offense articulated by that state's courts.'" *Hamilton*, 95 F.4th at 174 (quoting *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017)). "We focus on the decisions of the state's highest court when determining the elements of the offense," but decisions from the state's intermediate appellate court are "the next best indicia" of state law. *Id.* (cleaned up).

The offense at issue is North Carolina's statutory offense for second-degree murder, N.C. Gen. Stat. § 14-17 (2001), as it existed at the time of Goode's 2001 conviction. That statute first defines first-degree murder and then states that

> [a]ll other kinds of murder, including that which shall be proximately caused by the unlawful distribution of opium or any synthetic or natural salt, compound, derivative, or preparation of opium, or cocaine or other substance described in G.S. 90-91(1)d., when the ingestion of such substance causes the death of the user, shall be deemed murder in the second degree.

*Id.*

Goode argues that this offense does not require the "use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), because a defendant could be convicted "simply by selling" a controlled substance that the victim later "voluntarily ingests," Opening Br. at 13.

To the extent that Goode argues that the distribution of a controlled substance cannot constitute a use of physical force, *Castleman* forecloses that conclusion. 572 U.S. at 170–71 (explaining that a person may use force indirectly, such as by using poison). Thus, the means by which the defendant caused the victim's death are irrelevant. Indeed, "it is hard to imagine conduct that can cause another to die that does not involve physical force against

13

the body of the person killed." *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017) (cleaned up); *see also id.* at 237 ("Common sense dictates that murder is categorically a crime of violence under the force clause.").

But we must also consider mens rea. Goode argues that the offense's inclusion of deaths caused by drug distribution means that defendants can be convicted of second-degree murder with only a mens rea of recklessness. Our review of North Carolina law indicates otherwise.

In North Carolina, the elements of second-degree murder are "(1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *State v. Coble*, 527 S.E.2d 45, 46 (N.C. 2000). North Carolina did not remove the malice requirement when it added deaths resulting from drug distribution to the statute's scope. *State v. Davis*, 290 S.E.2d 574, 590 (N.C. 1982) (explaining that the legislature did not intend to create a new second-degree murder offense "arising solely from the fact that a death results from the unlawful distribution of controlled substances without a showing of intent and malice aforethought").

Malice is defined similarly in North Carolina and Virginia. In North Carolina, malice may be inferred "when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life." *State v. Rich*, 527 S.E.2d 299, 302 (N.C. 1991) (quotation omitted). Though murder and manslaughter offenses each reference recklessness, the recklessness that is "indicative of murder" is of a higher degree than the recklessness that is "associated with manslaughter." *Id.* at 303 (quoting *United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984)). Second-degree

14

murder requires the intent to perform an act "in such a reckless manner as *reflects knowledge* that injury or death would likely result, thus evidencing depravity of mind." *Id.* at 304 (emphasis added). Much like in Virginia, this level of mens rea "is closer in culpability to 'knowledge' than it is to 'recklessness.'" *Manley*, 52 F.4th at 150 (explaining that under Virginia law, the implied-malice element includes "a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice" (quotation omitted)).

Goode points to additional North Carolina cases involving deaths from drug distribution, but none show a reduced mens rea requirement. Rather, each holds that the necessary extreme recklessness stemmed from the defendant's knowledge of the dangerousness of the particular drug. In *State v. Liner*, the defendant supplied drugs "with the *knowledge* that the drugs were inherently dangerous" because two others had "become violently ill after using the drugs in defendant's presence." 391 S.E.2d 820, 822 (N.C. Ct. App. 1990) (emphasis added). Similarly, in *State v. Parlee*, the defendant knew the drug he distributed was inherently dangerous because he told others the pill was "pretty strong," and he advised his buyers "not to take a whole pill or do anything destructive with it." 703 S.E.2d 866, 870 (N.C. Ct. App. 2011) (cleaned up). As in *Manley*, this required mens rea "comes close" to the knowing state of "practically certain." 52 F.4th at 151.

Thus, the district court correctly concluded that North Carolina's second-degree murder statute is categorically a "violent felony" under the ACCA.

15

IV.

For the foregoing reasons, we deny the Government's motion for leave to file a motion to dismiss out of time, deny the Government's motion for summary affirmance as moot, and affirm the judgment of the district court.

*AFFIRMED*

16