**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-6812

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARTIN JAY MANLEY, a/k/a Buck,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Rebecca Beach Smith, Senior District Judge.  (4:08-cr-00144-RBS-3; 4:20-cv-00022-RBS)

Argued:  September 14, 2022                    Decided:  October 26, 2022

Before NIEMEYER, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion for the court in Parts I, II, and IV, in which Judge Diaz and Judge Quattlebaum concurred.  Judge Niemeyer wrote an opinion in Part III.

**ARGUED:**  Jacob Smith, Holly Chaisson, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** J. Scott Ballenger, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Raj Parekh, Acting United States Attorney, Alexandria, Virginia, Richard D. Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge, wrote the opinion for the court in Parts I, II, and IV, and wrote an opinion in Part III:

The issue presented in this appeal is whether offenses under 18 U.S.C. § 1959 (violent crimes in aid of racketeering activity, commonly referred to as "VICAR") — in particular, VICAR assault and VICAR murder — must be committed with a sufficiently culpable *mens rea* to amount to "crime[s] of violence," as necessary for conviction under 18 U.S.C. § 924(c). The VICAR statute punishes certain crimes committed in aid of racketeering activity, including (1) assault with a dangerous weapon or resulting in serious bodily injury under state or federal law and (2) murder under state or federal law. *Id*. § 1959(a)(1), (3). While the Supreme Court recently held in *Borden v. United States*, 141 S. Ct. 1817 (2021), that a crime with a *mens rea* of "recklessness" cannot qualify as a "violent felony" under 18 U.S.C. § 924(e), which is materially similar to a "crime of violence" in § 924(c)(3), we hold that the elements of both VICAR assault and VICAR murder in this case include a *mens rea* more culpable than mere recklessness and that the *mens rea* of both VICAR crimes satisfies the *mens rea* element of a "crime of violence" in § 924(c). Accordingly, we affirm the district court's judgment reaching the same result but for different reasons.

I

Martin Manley, a member of the street gang in Newport News, Virginia, known as the "Dump Squad," was charged in 2009 with counts of racketeering conspiracy, drug conspiracy, conspiracy to interfere with and interference with commerce by robbery, using a firearm during and in relation to a crime of violence, assault with a dangerous weapon in

2

aid of racketeering activity, maiming in aid of racketeering activity, murder in aid of racketeering activity, and using a firearm causing death.  Later in 2009, he pleaded guilty to Count 1, charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); Count 25, charging him with the use of a firearm during and in relation to a crime of violence, in violation of § 924(c); and Count 35, charging him with the use of a firearm during and in relation to a crime of violence causing death, in violation of § 924(c), (j).

Following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), Manley filed a motion under 28 U.S.C. § 2255 to vacate his two convictions for violation of § 924(c) (Counts 25 and 35), contending that the predicate offenses alleged for those violations were no longer "crimes of violence," as defined by § 924(c)(3).  *Davis* held that the "residual clause" defining a crime of violence in § 924(c)(3)(B) was unconstitutionally vague but left standing the "elements clause" definition in § 924(c)(3)(A).  Manley contended that his § 924(c) convictions relied on *conspiracy* to engage in racketeering as charged in Count 1, which, he argued, was not a crime of violence because it satisfied only the invalidated residual clause and that therefore his convictions on Counts 25 and 35 were no longer valid.

The district court denied Manley's § 2255 motion, noting that while the residual clause had indeed been held to be unconstitutionally vague, the elements clause "remain[ed] constitutionally valid."  Rejecting Manley's contention that his two 924(c) convictions were premised on racketeering conspiracy as charged in Count 1, the court held that the predicate offense for Manley's conviction on Count 25 was "assault with a dangerous weapon in aid of racketeering activity," in violation of 18 U.S.C. § 1959(a)(3),

3

as alleged in Count 24, which remained a crime of violence under the elements clause. It also held that the predicate offense for Manley's conviction on Count 35 was "murder in aid of racketeering activity," in violation of 18 U.S.C. § 1959(a)(1), as alleged in Count 34, which also remained a crime of violence under the elements clause.

While Manley's appeal from the district court's order denying his § 2255 motion was pending, the Supreme Court handed down its decision in *Borden*, which held that offenses that can be committed with a *mens rea* of recklessness are not "violent felonies." 141 S. Ct. at 1821–22, 1825 (plurality opinion); *id.* at 1835 (Thomas, J., concurring). Manley now argues that the predicate offenses for his § 924(c) convictions in both Counts 25 and 35 can be committed with a *mens rea* of recklessness and that therefore they are, by reason of *Borden*, no longer crimes of violence that can support his convictions under § 924(c).

II

Section 924(c), the offense of which Manley was convicted on both Counts 25 and 35, provides:

> [A]ny person who, during and in relation to any *crime of violence* . . . uses or carries a firearm . . . shall [be punished].

18 U.S.C. § 924(c)(1)(A) (emphasis added). And "crime of violence" is defined in the elements clause as "an offense that is a felony and . . . has as *an element* the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A) (emphasis added).

4

Here, the predicate crime of violence alleged in Count 25 was assault with a dangerous weapon in aid of racketeering activity ("VICAR assault"), in violation of 18 U.S.C. § 1959(a)(3), "as set forth in Count Twenty-four of [the] Indictment." And Count 24 charged Manley with committing VICAR assault by "knowingly, intentionally and unlawfully assault[ing]" a rival gang member "with a dangerous weapon, which resulted in serious bodily injury to [the rival gang member], in violation of Va. Code Ann. § 18.2-51 [unlawful wounding], for the purpose of gaining entrance to and maintaining and increasing position in an Enterprise engaged in racketeering activity." The crime of violence alleged in Count 35 was murder in aid of racketeering activity ("VICAR murder"), in violation of 18 U.S.C. § 1959(a)(1), "as set forth in Count Thirty-four of [the] Indictment." And Count 34 charged Manley with committing VICAR murder by "knowingly, willfully, and unlawfully caus[ing] the murder of Tony Vaughn in violation of Va. Code Ann. § 18.2-32 [first and second-degree murder], for the purpose of gaining entrance to and maintaining and increasing position in an Enterprise engaged in racketeering activity."

The issue before us is the question of law whether the offenses charged in Counts 24 and 34 — which were incorporated into Counts 25 and 35, purportedly as crimes of violence — required a *mens rea* more culpable than mere recklessness so as to actually qualify as "crime[s] of violence" following *Borden*. We address each crime in order.

5

A

The offense charged in Count 24 and incorporated into Count 25 purportedly as a "crime of violence" was a violation of VICAR assault (§ 1959(a)(3)), premised on the state offense of unlawful wounding in violation of Virginia Code § 18.2-51. The elements necessary for a conviction of VICAR assault are (1) that there be an "enterprise," as defined in § 1959(b)(2); (2) that the enterprise be engaged in "racketeering activity," as defined in 18 U.S.C. § 1961; (3) that the defendant have committed an assault "with a dangerous weapon" or "resulting in serious bodily injury"; (4) that the assault have violated state or federal law; and (5) that the assault have been committed for a designated pecuniary purpose or "for the purpose of gaining entrance to or maintaining or increasing position in [the] enterprise." 18 U.S.C. § 1959(a)(3); *see also United States v. Zelaya*, 908 F.3d 920, 926–27 (4th Cir. 2018); *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994). And the minimum elements necessary for proving the state assault offense alleged in Count 24 are that the person (1) "unlawfully" (2) cause a person bodily injury (3) "with the intent to maim, disfigure, disable, or kill." Va. Code Ann. § 18.2-51.

Manley's guilty plea to Count 25, therefore, confessed that each element of the crime alleged in Count 24 was satisfied, and thus those elements may be considered to determine whether the offense qualified as a crime of violence for purposes of § 924(c). Of course, if the *mens rea* element can, as a matter of law, be satisfied with a mental state of recklessness or negligence, the offense is not a crime of violence. *See Borden*, 141 S. Ct. at 1821–22, 25 (plurality opinion) (explaining that offenses with a *mens rea* of ordinary recklessness are not violent felonies); *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (holding

6

that offenses with a *mens rea* of negligence are not crimes of violence).  But if the elements of a crime "demand[]" that the person have "direct[ed] his action at, or target[ed], another individual," the action is more purposeful and satisfies the *mens rea* requirement necessary for an offense to qualify as a crime of violence.  *Borden*, 141 S. Ct. at 1825 (plurality opinion).

We have held specifically that the unlawful wounding offense proscribed by Virginia Code § 18.2-51 meets the criteria for a crime of violence.  In *United States v. Rumley*, 952 F.3d 538, 551 (4th Cir. 2020), we concluded that Virginia unlawful wounding was categorically a "violent felony" under 18 U.S.C. § 924(e) — which defines "violent felony" similarly to the way § 924(c)(3) defines "crime of violence" — because it satisfied the elements clause.  We explained, "[N]ot only does the Virginia statute require the causation of bodily injury, . . . it also requires that the person causing the injury have acted with the specific intent to cause severe and permanent injury — maiming, disfigurement, permanent disability, or death."  *Id.* at 550.  And this "specific intent" requirement, combined with the causation of bodily injury, necessarily entailed the use of physical force. *Id.*; *see also Moreno-Osorio v. Garland*, 2 F.4th 245, 253–54 (4th Cir. 2021).  Thus, we readily conclude that Virginia unlawful wounding, in violation of § 18.2-51, satisfies the criteria set forth in *Borden* for a crime of violence, as the Virginia statute "demands that the perpetrator direct his action at, or target, another individual," and such a *mens rea* is greater than negligence or recklessness.  *Borden*, 141 S. Ct. at 1825 (plurality opinion); *cf. United States v. Townsend*, 886 F.3d 441, 445 (4th Cir. 2018) (noting that North Carolina assault with a deadly weapon with intent to kill and inflicting serious injury required proof

7

of "a mens rea greater than negligence or recklessness" because it required "proof of a specific intent to kill").

Manley argues that we should not consider the elements of the state statute alleged in Count 24 to determine whether the VICAR assault offense is a crime of violence because the predicate crime of violence alleged in Count 25 was VICAR assault, not Virginia assault. But this argument overlooks element (4) of VICAR assault, which requires that the assault be "in violation of the laws of any State or the United States." 18 U.S.C. § 1959(a). To properly charge a VICAR assault, therefore, the government must identify a specific state or federal law that the defendant violated by engaging in the conduct underpinning the VICAR offense. In this case, that charged offense was a violation of Virginia Code § 18.2-51 (unlawful wounding). And because the Virginia offense constitutes an element of the VICAR offense, it is proper to examine whether a conviction under the Virginia statute would be a crime of violence. *See United States v. Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019); *see also United States v. Keene*, 955 F.3d 391, 392–93 (4th Cir. 2020).

Presuming that it is appropriate to consider the *mens rea* of the unlawful wounding offense under Virginia Code § 18.2-51, Manley argues that cases from the Virginia Court of Appeals show that convictions under § 18.2-51 are upheld in Virginia based on reckless conduct, thus precluding the crime's qualification as a crime of violence. *See Shimhue v. Commonwealth*, No. 1736-97-2, 1998 WL 345519, at *1 (Va. Ct. App. June 30, 1998) (upholding a conviction for malicious wounding when the defendant twice fired his weapon into the floor of his apartment to frighten a woman, but one bullet traveled through

8

the floor and struck the leg of a neighbor in the apartment below); *David v. Commonwealth*, 340 S.E.2d 576, 577 (Va. Ct. App. 1986) (upholding a conviction for unlawful wounding after the defendant intentionally fired a gun at the cement near where other people were standing and the bullet ricocheted and hit the victim's foot); *Knight v. Commonwealth*, 733 S.E.2d 701, 702–03 (Va. Ct. App. 2012) (upholding a conviction for malicious wounding based on the defendant's traveling at dangerously excessive speeds in a populated area and causing a multi-car crash).  All three cases, however, came to the appellate court under a challenge to the sufficiency of the evidence.  *See Shimhue*, 1998 WL 345519, at *1–2; *David*, 340 S.E.2d at 577; *Knight*, 733 S.E.2d at 707–08.  And the sufficiency of the evidence was a question for the trier of fact.  In its review, therefore, the Virginia Court of Appeals was required to view the evidence in the light most favorable to the Commonwealth.  Thus, the court in each case could and did accept that the factfinder inferred that the defendant intended the immediate consequences of his voluntary acts.  *See Shimhue*, 1998 WL 345519, at *1; *David*, 340 S.E.2d at 577; *Knight*, 733 S.E.2d at 704, 707–08.  The Virginia court's holdings in these cases, however, hardly rejected the *mens rea* required by the explicit text of the statute that the perpetrator act with "the intent to main, disfigure, disable, or kill."  Va. Code Ann. § 18.2-51; *see also Rumley*, 952 F.3d at 550 (noting that § 18.2-51 requires "the specific intent to cause severe and permanent injury").  The Supreme Court of Virginia has likewise described Virginia Code § 18.2-51 as requiring proof of "specific intent."  *See, e.g.*, *Commonwealth v. Vaughn*, 557 S.E.2d 220, 222 (Va. 2002).

9

At bottom, we conclude that the VICAR assault offense charged in Count 24 and incorporated into Count 25 purportedly as a crime of violence is indeed a crime of violence, thereby rendering Manley's conviction under Count 25 valid.

B

The offense charged in Count 34 and incorporated into Count 35 purportedly as a "crime of violence" was a violation of VICAR murder (§ 1959(a)(1)), premised on the state offense of murder in violation of Virginia Code § 18.2-32 (first and second-degree murder). The elements for a conviction of VICAR murder are the same as those of VICAR assault other than that the offense committed must be murder under a state or federal law, rather than assault. And the Virginia murder statute alleged in Count 34 includes two offenses, first-degree murder and second-degree murder. Second-degree murder is defined as all murders that are not first-degree murder. Va. Code Ann. § 18.2-32. The parties agree that the allegations in the indictment charge Manley with second-degree murder.

The Virginia Supreme Court has held that Virginia's murder statute, Virginia Code § 18.2-32, codifies the common-law crime of murder. *See Flanders v. Commonwealth*, 838 S.E.2d 51, 56 (Va. 2020) ("[A]lthough Virginia law recognizes capital murder, first-degree murder, and second-degree murder and punishes each with different ranges of penalties[,] . . . all three gradations punish the same offense of common-law murder"). The crime of second-degree murder has two elements. First, the victim must be shown to have died as a result of the defendant's conduct, and second, the defendant's conduct must be shown to be malicious. *See Essex v. Commonwealth*, 322 S.E.2d 216, 220 (Va. 1984). In

10

the absence of express malice, the malice element "may only be implied from conduct likely to cause death or great bodily harm, willfully or purposefully undertaken." *Id.* Defining implied malice more fully, the Virginia Supreme Court has stated that it "encapsulates a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice." *Watson-Scott v. Commonwealth*, 835 S.E.2d 902, 904 (Va. 2019) (cleaned up). This *mens rea* thus amounts to what the parties agree is "extreme recklessness."

The parties dispute, however, whether "extreme recklessness" is a level of *mens rea* sufficient to satisfy the statutory definition of a crime of violence in § 924(c)(3)(A) (requiring as an element "the use, attempted use, or threatened use of physical force against the person or property of another"). *Borden* specifically elected not to address whether a *mens rea* of extreme recklessness is sufficient to constitute a violent felony or crime of violence. *See Borden*, 141 S. Ct. at 1825 n.4 (plurality opinion). But the Court's analysis is nonetheless informative.

*Borden* addressed two distinct concepts: (1) what constitutes criminally culpable *mens rea*, and (2) what *mens rea* does the definition of "violent felony" require. In its discussion of the violent felony definition in the elements clause of § 924(e), which is similar to the definition in the elements clause in § 924(c)(3)(A) at issue here, the Court directs us to the statutory definition's requirement of the "*use* of physical force *against* the person of another," 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added), and notes that it "demands that the perpetrator direct his action at, or target, another individual," *Borden*,

11

141 S. Ct. at 1825 (plurality opinion). And that conclusion led the Court to hold that conduct that is "purposeful" or "knowing" fits § 924(e)'s *mens rea* requirement, whereas conduct that is "reckless" or "negligent" does not. *Id.* at 1826–28. That holding was made within the context of the Court's general discussion of *mens rea*, where it observed that "four states of mind . . . give rise to criminal liability," which are "in descending order of culpability: purpose, knowledge, recklessness, and negligence." *Id.* at 1823. The Court acknowledged, however, that some statutes have a *mens rea* of "extreme recklessness," falling somewhere between "knowledge" and "recklessness" on the Court's scale. *Id.* at 1825 n.4. But it made clear that it was not addressing whether the definition of a violent felony could be satisfied with a *mens rea* of extreme recklessness. *Id.* We conclude, however, that the answer to that question can nonetheless be derived from the Court's analysis.

The Court allowed that extreme recklessness falls on the *mens rea* scale of culpability between "knowledge" and "recklessness," where "knowledge" is a sufficient *mens rea* for a violent felony and "recklessness" is not. *Borden*, 141 S. Ct. at 1825 n.4 (plurality opinion). It defined "knowledge" to exist when one "is aware that a result is *practically certain* to follow from his conduct" and "recklessness" to exist where one "*consciously disregards* a substantial and unjustifiable risk." *Id.* at 1823–24 (emphasis added) (cleaned up). Employing the Court's scale, we conclude that extreme recklessness, as defined by Virginia law, not only falls between "knowledge" and "recklessness" but also that it is closer in culpability to "knowledge" than it is to "recklessness." As the Virginia Supreme Court has stated, the implied-malice element of second-degree murder

12

encapsulates "a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice." *Watson-Scott*, 835 S.E.2d at 904 (cleaned up).  The Virginia Supreme Court has explained that this malice element may be "implied *by conduct*" when the conduct is "*so harmful*" to the victim as to support an inference of malice.  *Id*. (emphasis added) (cleaned up).  While this definition may not describe precisely the "practically certain" state of "knowing," it comes close.  It follows, we conclude, that this formulation necessarily requires conduct that uses physical force *against* another, as required by the definition of a crime of violence in § 924(c)(3)(A).

Since *Borden* was decided, two other courts of appeals have reached the same conclusion that crimes involving a *mens rea* short of knowledge but greater than ordinary recklessness can qualify as crimes of violence.  *See Alvarado-Linares v. United States*, 44 F.4th 1334, 1343–44 (11th Cir. 2022); *United States v. Begay*, 33 F.4th 1081, 1093 (9th Cir. 2022) (en banc), *petition for cert. denied*, 598 U.S. ____ (2022).  And prior to *Borden*, the First Circuit similarly decided that second-degree murder under Puerto Rico law is a violent felony under § 924(e) because it requires "extreme recklessness" and therefore satisfies the elements clause, even though the First Circuit previously determined that ordinary recklessness does not suffice.  *See United States v. Báez-Martínez*, 950 F.3d 119, 125–27 (1st Cir. 2020).  We now join these courts.

Our conclusion that an offense with a *mens rea* of extreme recklessness satisfies the *mens rea* of a "crime of violence" accords with the context and purpose of § 924(c).  That statute assigns additional culpability to individuals who use or carry a firearm during the

13

commission of a crime of violence, and murder is obviously among the most violent of crimes. Indeed, we have observed that "[c]ommon sense dictates that murder is categorically a crime of violence under the force clause." *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017). While we still must, of course, analyze the *mens rea* required in the commission of murder under any given statute, we believe that the difference between "extreme recklessness" and ordinary criminal recklessness assuages the concern articulated in *Borden* that a lower *mens rea* requirement may "blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and [all] other crimes." *Borden*, 141 S. Ct. at 1831 (plurality opinion) (quoting *Leocal*, 543 U.S. at 11).

C

At bottom, we hold that VICAR assault committed by violating Virginia Code § 18.2-51 and VICAR murder committed by violating Virginia Code § 18.2-32 are crimes of violence under § 924(c) and that Manley's convictions under Counts 25 and 35 are therefore valid.

III

NIEMEYER, Circuit Judge, as to this Part III:

Manley also contends that Counts 24 and 34, which are incorporated into Counts 25 and 35, to which he pleaded guilty, simply allege generic assault and generic murder and that therefore we must focus on the elements of the VICAR offenses without regard to the counts' references to violations of state law. Indeed, he notes that he did not even plead guilty to state offenses because the state offenses were not mentioned in his plea agreement,

14

the statement of facts, or the order accepting the plea. Based on these premises, he contends that VICAR assault can be committed with a *mens rea* of "ordinary recklessness" and therefore is not, by reason of *Borden*, a crime of violence, and that VICAR murder can be committed with a *mens rea* of "extreme recklessness," which is simply another form of recklessness insufficient to amount to a crime of violence.

First, I should note, as discussed above, that Manley's guilty plea was to Counts 25 and 35, which specifically incorporated Counts 24 and 34, respectively, charging Manley with the commission of VICAR assault and VICAR murder, the *elements* of which included violations of Virginia Code §§ 18-2.51 and 18-2.32, respectively. But addressing Manley's argument on the merits, I note that Manley simply overlooks the *mens rea* elements for the VICAR violations.

While Manley focuses only on the *mens rea* elements of generic assault and generic murder standing alone, he fails to account for the necessary VICAR element (5) that the assault or murder be committed "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from" a racketeering enterprise or "for the purpose of gaining entrance to or maintaining or increasing position" in the racketeering enterprise. 18 U.S.C. § 1959(a). Thus, to be guilty of VICAR assault or VICAR murder, a defendant must carry out the assault or murder for a racketeering-related pecuniary purpose or with the purpose of improving his position in a racketeering enterprise. And "purpose," as *Borden* explained, is a state of mind where the defendant "'consciously desires' a particular result." 141 S. Ct. at 1823 (plurality opinion) (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). It follows that, when a defendant

15

assaults or murders to gain a personal collateral advantage with an enterprise, he makes a decision — a deliberate choice — to carry out the assault or the murder to demonstrate his worth to the enterprise. This state of mind is more culpable than the reckless conduct described in *Borden*. As *Borden* noted, the definition of a violent felony or a crime of violence "covers purposeful and knowing acts." *Id.* at 1826. For this reason, I also conclude — in addition to our conclusions that Virginia law provides a sufficient *mens rea for* both offenses — that VICAR assault and VICAR murder require a *mens rea* sufficient to support the *mens rea* of a crime of violence within the meaning of § 924(c)(3) and that therefore Manley's convictions under § 924(c)(1) are valid.

Manley argues nonetheless that a defendant can engage in conduct with the specific intent to increase or maintain his position in a racketeering enterprise without simultaneously intending to use or threaten force. He offers the example of a defendant who drives a get-away car recklessly to evade police and kills someone, as well as the example of a defendant who drives drunk and causes serious bodily harm after getting behind the wheel because a fellow gang member dared him to do so. He maintains that these defendants would be acting with the specific intent of gaining or maintaining a position in the enterprise without intending to use force against the person or property of another.

This argument, however, cannot be accepted if we are to remain faithful to the VICAR text. VICAR's "purpose" element requires that the defendant commit the assault or murder "for the purpose of gaining entrance to or maintaining or increasing position" in the enterprise, *not that the defendant commit any act with that purpose that may then have*

16

*the unintended consequences of resulting in assault or murder*.  18 U.S.C. § 1959(a).  In Manley's examples, the hypothetical defendant may separately be acting with a purpose to increase his position in the enterprise, but he is not acting with that purpose with respect to committing the assault or murder.  The get-away driver intends to escape the police and the drunk gang member intends to impress his fellow gang members, both in connection with their role in the enterprise.  But if they harm someone negligently or recklessly in the process, *the harm* was not committed "for the purpose of" increasing their position in the enterprise.  VICAR's purpose element demands a closer tie between the purpose of maintaining or increasing position in the enterprise and the commission of the assault or murder.

IV

Counts 24 and 34 of the indictment alleged violations of VICAR assault and VICAR murder, respectively, with their multiple layers of *mens rea* ranging from extreme recklessness to purposefulness.  And common sense confirms that a defendant who, as part of his role in a racketeering enterprise, commits an assault with a dangerous weapon or that results in serious bodily injury or commits second-degree murder, commits a crime of violence, as he *used or threatened to use force against* the person of another.

The judgment of the district court is accordingly

AFFIRMED.

17