**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-6285**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARLOS EMANUEL KINARD,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:93−cr−00215−GCM−6; 3:21−cv−00161−GCM)

_____

Argued:  October 25, 2023                          Decided:  February 20, 2024

_____

Before RUSHING and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Affirmed by published per curiam opinion.  Senior Judge Keenan wrote a separate concurring opinion, in which Judge Heytens joined.

_____

**ARGUED:**  Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Anthony J. Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

PER CURIAM:

The issue in this appeal is whether assault with a dangerous weapon under 18 U.S.C. § 1959(a)(3), in violation of the North Carolina statutory crime of assault with a deadly weapon, N.C. Gen Stat. § 14-33(c)(1), requires a mens rea sufficiently culpable to qualify as a "crime of violence" under 18 U.S.C. § 924(c). Based on our recent decision in *United States v. Thomas*, 87 F.4th 267 (4th Cir. 2023), we hold that this offense is a "crime of violence" and we affirm the district court's judgment.

I.

In 1994, a jury convicted Carlos Emanuel Kinard on twelve counts related to a drug and racketeering conspiracy. Count 33 charged Kinard with use of a firearm during and in relation to a "crime of violence" under § 924(c) (the § 924(c) conviction). The predicate offense for the § 924(c) conviction arose under the violent crimes in aid of racketeering statute (VICAR), for VICAR assault with a dangerous weapon, 18 U.S.C. § 1959(a)(3) (the predicate VICAR assault offense). The predicate VICAR assault offense, in turn, incorporated the North Carolina statutory crime of assault with a deadly weapon (the North Carolina assault offense), N.C. Gen Stat. § 14-33(c)(1).[1] The district court imposed a 20-

---

[1] At the time Kinard was prosecuted for this offense, the relevant statutory subsection was N.C. Gen. Stat. § 14-33(b)(1). *See* N.C. Laws 1991, ch. 525, § 1 (effective Oct. 1, 1991). For simplicity, we refer in this opinion to the materially identical current version of this provision. *See* N.C. Gen. Stat. § 14-33(c)(1).

year consecutive sentence for the § 924(c) conviction,[2] and we affirmed Kinard's judgment of conviction on direct appeal. *United States v. Padgett*, 78 F.3d 580 (4th Cir. 1996) (Table).

In 2016, Kinard moved to vacate his sentence under § 2255, contending that the § 924(c) conviction was invalid because the predicate VICAR assault offense was not a "crime of violence" after *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that "the residual clause" of the Armed Career Criminal Act, § 924(e)(2)(B)(ii), is unconstitutionally vague). The district court rejected Kinard's motion as untimely and, in the alternative, as meritless, concluding that the predicate VICAR assault offense qualified as a "crime of violence" under § 924(c)'s "force clause" because that offense had as an element "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

In 2019, Kinard moved this Court for authorization to file a successive habeas petition based on the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) (holding that the residual clause of § 924(c) is unconstitutionally vague). After we granted Kinard authorization to file the successive petition, he asked the district court to vacate his § 924(c) conviction based on the new rule of constitutional law set forth in *Davis*.

---

[2] On the remaining eleven counts of conviction, the court imposed seven concurrent life sentences, two concurrent 20-year sentences, one consecutive 10-year sentence, and one additional consecutive 20-year sentence. The district court later reduced Kinard's sentences for three offenses not at issue here under section 404 of the First Step Act of 2018. *See* Pub L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).

In the district court, Kinard argued that the predicate VICAR assault offense is not categorically a "crime of violence" for two reasons. First, Kinard argued that under the decision in *Davis*, the predicate VICAR offense could be committed without the use, attempted use, or threatened use of physical force against another. Second, Kinard contended that the predicate VICAR assault offense could be committed negligently or recklessly and, thus, did not qualify as a "crime of violence" based on the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021) (plurality opinion) (holding that a crime with a mens rea of recklessness did not qualify as a violent felony under the Armed Career Criminal Act, 18 § U.S.C. 924(e)(2)(B)(i)). The district court denied Kinard's motion, holding that VICAR assault with a dangerous weapon is categorically a "crime of violence" because the common law definition of "assault" satisfies the § 924(c) force clause. Kinard timely appealed.

## II.

On appeal, Kinard contends that the predicate VICAR assault crime, which incorporated the North Carolina assault offense, does not qualify as a § 924(c) "crime of violence" because it can be committed with a mens rea of "culpable negligence." We review de novo the legal question whether an offense qualifies as a § 924(c) "crime of violence." *United States v. Mathis*, 932 F.3d 242, 263 (4th Cir. 2019).

Under § 924(c), "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . shall be punished." 18 U.S.C. § 924(c)(1)(A). Accordingly, "an essential

4

element of [Kinard's § 924(c)] conviction was that his conduct was 'in relation to [a] crime of violence.'" *United States v. McDaniel*, 85 F.4th 176, 184 (4th Cir. 2023).  A "crime of violence," in turn, is "an offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A) (the force clause).

To assess whether an offense qualifies as a "crime of violence" under the force clause, courts generally apply the categorical approach. *McDaniel*, 85 F.4th at 184.  Under that approach, the court does not consider the facts of a defendant's conduct, and instead evaluates whether the elements of the predicate offense "necessarily involve[] the defendant's 'use, attempted use, or threatened use'" of force.  *See Borden*, 593 U.S. at 424 (citation omitted).  An offense qualifies as a "crime of violence" under § 924(c)(3) only when this force is employed with a mens rea greater than recklessness.  *Id.* at 432; *Thomas*, 87 F.4th at 270.

In limited circumstances, the applicable statute may create multiple offenses, only some of which qualify as "crime[s] of violence."  *McDaniel*, 85 F.4th at 184.  For such "divisible" statutes, such as the VICAR statute in this case, we apply the modified categorical approach.  *Id.*; *Thomas*, 87 F.4th at 272.  This "tool" adds an additional, foundational step to the categorical approach, during which the court may review certain underlying documents, such as the indictment, jury instructions, or plea agreement and colloquy, to identify "which of the statute's alternative elements formed the basis of the defendant's prior conviction."  *Thomas*, 87 F.4th at 272 (citation omitted).  After completing this step, the court returns to the traditional categorical approach to evaluate

5

whether that offense qualifies as a "crime of violence" under § 924(c). *United States v. Simmons*, 11 F.4th 239, 254 (4th Cir. 2021) (citation omitted).

We recently applied these principles in evaluating whether a different VICAR offense, VICAR assault with a dangerous weapon in violation of Virginia Code §§ 18.2-53.1 and 18.2-282, qualifies as a "crime of violence." *Thomas*, 87 F.4th at 269, 274. In *Thomas*, we explained that one of the elements of a VICAR assault offense is that the assault "be committed 'as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from' a racketeering enterprise or 'for the purpose of gaining entrance to or maintaining or increasing position' in the racketeering enterprise" (the purpose element). *Id.* at 273 (quoting 18 U.S.C. § 1959(a)). We held that this element of a VICAR assault offense, which requires "a deliberate choice . . . to carry out the assault," "satisfies" the requirement in *Borden* that a "crime of violence" "involve purposeful or knowing conduct." *Id.* (omission added).

Our holding in *Thomas*, that VICAR's purpose element satisfies the mens rea requirement for a § 924(c) "crime of violence," resolves the present appeal.[3] The predicate VICAR assault offense, which incorporated the North Carolina assault offense, had as an element that Kinard acted with one or more of the purposes set forth in § 1959(a). Therefore, under *Thomas*, the predicate VICAR assault offense in this case met *Borden*'s requirement that a "crime of violence" "involve purposeful or knowing conduct." *Thomas*,

---

[3] Because our holding in *Thomas* regarding the purpose element resolves Kinard's appeal, we do not reach the government's alternative argument that the "enumerated federal offense" of assault with a dangerous weapon requires a sufficiently culpable mens rea for a "crime of violence" under § 924(c). *See Thomas*, 87 F.4th at 273.

6

87 F.4th at 274. Accordingly, we hold that the predicate VICAR assault offense was a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A), and we affirm the district court's judgment.

*AFFIRMED*

BARBARA MILANO KEENAN, Senior Circuit Judge, with whom JUDGE HEYTENS joins, concurring:

I join in the present judgment because I agree that our decision in *United States v. Thomas*, 87 F.4th 267 (4th Cir. 2023), which issued after briefing and argument in this case, controls the outcome of Kinard's appeal. Nevertheless, I write separately to relay my concerns with the resulting analysis.

I.

I begin by outlining our usual approach to determining whether a VICAR offense categorically qualifies as a "crime of violence" under § 924(c). To sustain a conviction for VICAR assault, the government must show:

> (1) that there [is] an "enterprise," as defined in § 1959(b)(2); (2) that the enterprise [is] engaged in "racketeering activity," as defined in 18 U.S.C. § 1961; (3) that the defendant [] committed an assault "with a dangerous weapon" or "resulting in serious bodily injury"; (4) that the assault have violated state or federal law; and (5) that the assault [was] committed for a designated pecuniary purpose or "for the purpose of gaining entrance to or maintaining or increasing position in [the] enterprise" [(the purpose element)].

*United States v. Manley*, 52 F.4th 143, 147 (4th Cir. 2022) (quoting 18 U.S.C. § 1959(a)). Before *Thomas*, this Court's "crime of violence" analysis of predicate VICAR offenses started and ended with an evaluation of the fourth requirement, namely, whether the incorporated state or federal offense satisfied the requirements of the § 924(c) force clause. *See, e.g., id.* at 148 ("To properly charge a VICAR assault, . . . the government must identify a specific state or federal law that the defendant violated by engaging in the

8

conduct underpinning the VICAR offense."); *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir. 2019). Had we followed that approach in this case, we would have concluded that the incorporated offense of assault with a deadly weapon under North Carolina law, N.C. Gen. Stat. § 14-33(c)(1), which can be committed with "culpable negligence," does not satisfy the mens rea requirement for a "crime of violence" under the § 924(c) force clause. *See, e.g.*, *United States v. Simmons*, 917 F.3d 312, 321 (4th Cir. 2019) (holding that a similar North Carolina assault offense, like "any of the different forms of North Carolina assault," can be proved with a mens rea of culpable negligence); *Borden v. United States*, 593 U.S. 420, 444 (2021) (plurality opinion).

In *Thomas*, however, we became the first of our sister circuits to rely on the final element of a substantive VICAR assault offense, namely, the purpose element, to establish the mens rea necessary for a predicate VICAR assault offense to qualify as a "crime of violence" under § 924(c). 87 F.4th at 273–74. We also held, citing *United States v. Keene*, 955 F.3d 391 (4th Cir. 2020), that for every charge of VICAR assault with a dangerous weapon the government must prove as an element the enumerated federal offense of "assault with a dangerous weapon." 87 F.4th at 274. I set forth below my concerns with both of these points.

A.

Initially, I disagree that the purpose element of the VICAR statute necessarily satisfies the mens rea requirement under *Borden*. In my view, this reading contradicts the

9

textual requirements of the force clause and, as a result, improperly categorizes as "crimes of violence" offenses that otherwise would not qualify as such under *Borden*.

To provide context for the mens rea required for a § 924(c) crime of violence under the force clause, I first outline the Supreme Court's holding in *Borden*. There, the Court held that under the materially identical § 924(e) force clause, an offense does not qualify as a "violent felony" if the offense can be committed with a mens rea of recklessness.[1]  593 U.S. at 429.  Like the § 924(c) force clause, a violent felony under § 924(e) must have "as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* at 424 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).

Consistent with Supreme Court precedent, the parties in *Borden* agreed that the term "use" in the § 924(e) force clause requires the "'volitional' or 'active' employment of force."  *Id.* at 430 (quoting *Voisine v. United States*, 579 U.S. 686, 692–94 (2016)).  But the parties disputed the meaning of the phrase "against the person of another" (the "against" clause).  *Id.* at 430, 443.  The defendant argued that the "against" clause requires that the volitional force be directed at an intended target, while the government argued that the clause refers merely to the recipient of the force.  *Id.* at 430.

---

[1] The primary difference between the force clause in § 924(c) and the § 924(e) force clause is that the § 924(c) force clause also applies to crimes against property.  *Compare* 18 U.S.C. § 924(c)(3)(A) (defining a "crime of violence" as a felony having "as an element the use, attempted use, or threatened use of physical force against the person *or property* of another" (emphasis added)), *with id.* § 924(e)(2)(B)(1) (defining a violent felony as an offense having "as an element the use, attempted use, or threatened use of physical force against the person of another").  Since the Supreme Court issued *Borden*, we have applied the Court's holding to the § 924(c) force clause.  *See, e.g.*, *Manley*, 52 F.4th at 147.

The Court adopted the defendant's interpretation, reasoning that the term "against" refers to the "conduct's conscious object" and, thus, that the "against" clause incorporates a required mens rea greater than recklessness. *Id.* at 430–31. In support of its conclusion, the Court in *Borden* provided helpful scenarios comparing the conduct of three individuals who, with varying degrees of mental state, strike a pedestrian while driving a car.

In the Court's description, the first driver *purposefully* aims the car at the pedestrian, desiring to hit him. *Id.* at 432. The second driver sees the pedestrian in his path but speeds ahead anyway, *knowing* that the car will hit the pedestrian. *Id.* And the third driver, late to work, *recklessly* runs a red light and hits a pedestrian whom he did not see. *Id.*

The Court explained that the first two drivers "consciously deployed the full force of an automobile at another person" and thus "used physical force against the person of another" within the meaning of the force clause. *Id.* According to the Court, the third driver caused the same harm, namely, "making contact with another person," and endangered others by consciously disregarding the real risk of that harm. *Id.* However, the Court explained that the third driver had not used force "against" another person within the meaning of the force clause, because his conduct was "*not opposed to or directed at another.*" *Id.* (emphasis added).

*Borden* thus establishes that a predicate "crime of violence" under the materially identical § 924(c) force clause must involve force that not only is volitional but, also, is consciously directed at a target. *Id.* at 430–32; *Thomas*, 87 F.4th at 270 (explaining that *Borden* applies to a "crime of violence" analysis under § 924(c)); *see Somers v. United States*, 15 F.4th 1049, 1053 (11th Cir. 2021) (certification order) (explaining that pursuant

11

to *Borden*, a "crime of violence" under § 924(c) requires "both the general intent to volitionally take the action of using, attempting to use, or threat[en]ing to use force and *something more*: that the defendant direct the action at a target, namely another person" (emphasis added)). In other words, the predicate offense must require both that the individual actively employ the force that resulted in the harm, *and* that the individual direct that action at an intended target with a mens rea greater than recklessness. *See Borden*, 593 U.S. at 430–32.

Turning to the mens rea required under the purpose element of the VICAR statute, to satisfy this element the government must show that the defendant committed the assault for "a designated pecuniary purpose" or "for the purpose of gaining entrance to or maintaining or increasing position in [the] enterprise." *Manley*, 52 F.4th at 147 (quoting 18 U.S.C. § 1959(a)). We have explained that the government need not prove a "nexus" between the offense and the racketeering activity to satisfy this "general purpose" requirement, and that the government can prove this element by showing that the defendant committed the incorporated state or federal offense "because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Zelaya*, 908 F.3d 920, 927 (4th Cir. 2018) (citation omitted).

In my view, the mens rea required under the force clause thus differs from the mens rea required under the purpose element in that the latter does not require a showing that the defendant knowingly directed force *at a target*. To illustrate this distinction, consider a defendant riding in a car late at night who sees a rival gang member's empty car parked on

12

a deserted street in the defendant's gang's territory.  The defendant fires a "warning shot" out his car's window.  As he passes the empty car, the defendant sees that the bullet has hit and injured a rival gang member, whom the defendant had not seen standing nearby.  When the defendant returns to his gang's headquarters, he brags to his superiors that he shot the rival gang member.

In that scenario, the defendant purposefully fired the gun, but he did not purposefully hit the individual he had not seen.  Instead, in firing the gun and injuring a person, the defendant "pa[id] insufficient attention to the potential application of force" and "consciously disregard[ed] a substantial and unjustifiable risk."  *Borden*, 593 U.S. at 427, 432.  In other words, the defendant in this example *recklessly* applied force to an individual, rather than *directing* force at a target.

Nevertheless, under our precedent, the defendant likely committed the assault "for the purpose of gaining entrance to or maintaining or increasing position in [the] enterprise," as required to satisfy the purpose element of a substantive VICAR offense.  *Manley*, 52 F.4th at 147 (quoting 18 U.S.C. § 1959(a)(3)); *United States v. Umaña*, 750 F.3d 320, 335 (4th Cir. 2014) (explaining that facts supporting the purpose element may include activity that occurs after commission of the crime, such as a defendant who "return[s] to . . . headquarters to boast about his exploits with a mind toward advancement").  In my view, as illustrated by the above scenario, proof of a "gang-related motive" under the purpose element does not, of itself, establish that the defendant consciously directed any force

13

"against" a target, as required to qualify that offense as a § 924(c) "crime of violence."

*Borden*, 593 U.S. at 430–31.[2]

B.

Although this Court's conclusion in *Thomas* regarding the purpose element resolves the merits of Kinard's appeal, I briefly address the additional conclusion in *Thomas* that for every charge of VICAR assault with a dangerous weapon the government must prove as an element the enumerated federal offense of assault with a dangerous weapon. 87 F.4th at 274. The government also made this argument in the present case and, in my view, both the government's argument here and our holding in *Thomas* undermine the plain text of the VICAR statute.

18 U.S.C. § 1959(a) provides:

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering

---

[2] I acknowledge that the enumerated federal offenses reflect the types of crimes that society generally considers to be "violent." And in many cases, conduct that can be prosecuted under VICAR will also constitute a "crime of violence" under § 924(c). Indeed, when Congress enacted the VICAR statute, Congress may have intended that VICAR crimes generally would qualify as "crime[s] of violence" under the broader reach of the § 924(c) residual clause. *See* 18 U.S.C. § 924(c)(3)(B) (including as a "crime of violence" any felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). But the Supreme Court since has invalidated that provision, leaving the force clause as the only means for a predicate offense to qualify as a "crime of violence" under § 924(c). *Davis*, 139 S. Ct. at 2324. And in my view, it is not this Court's prerogative to artificially expand the scope of the force clause to cover offenses that no longer qualify as "crime[s] of violence" after *Davis*. *See United States v. Taylor*, 142 S. Ct. 2015, 2023 (2022) (rejecting a broad reading of the force clause because "it would only wind up effectively replicating the work formerly performed by the residual clause, collapsing the distinction between them, and perhaps inviting similar constitutional questions along the way").

14

> activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual *in violation of the laws of any State or the United States*, or attempts or conspires so to do, shall be punished.

18 U.S.C. § 1959(a) (emphasis added). Under a natural reading of this provision, the modifier "in violation of the laws of any State or the United States" qualifies each enumerated federal offense. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) (explaining that the series-qualifier canon of statutory construction "generally reflects the most natural reading of a sentence"); *Lockhart v. United States*, 577 U.S. 347, 352 (2016) (suggesting that this canon would apply to a "simple and parallel" list of items that are "often cited together"). Thus, the phrase "assaults with a dangerous weapon" simply identifies the relevant generic federal offense and does not add an element of proof to the VICAR crime charged in the indictment. *See Manley*, 52 F.4th at 148 ("[T]he government must identify a specific state or federal law that the defendant violated by engaging in the conduct underpinning the VICAR offense.").

Consistent with this plain meaning of the statute, in our prior cases addressing VICAR offenses we generally have not identified the enumerated federal offense as a separate element. *See United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994); *see also Zelaya*, 908 F.3d at 926–27; *United States v. Simmons*, 11 F.4th 239, 271 (4th Cir. 2021). In *Thomas*, however, this Court, citing *Keene*, stated that "one element of a VICAR

15

conviction is that the defendant committed the enumerated federal offense."[3] *See* 87 F.4th at 274 (citing *Keene*, 955 F.3d at 393); *id.* at 272–73 (outlining the elements of a VICAR assault offense).

In my view, our decision in *Keene* does not bear on whether there is a separate generic offense element. In that case, we considered an interlocutory appeal after the district court granted the defendants' motion to dismiss three substantive VICAR charges. 955 F.3d at 392. On appeal, we were asked to decide whether the elements of the incorporated state offense for the VICAR assault charges must "categorically match" the elements of the "enumerated federal offense" of assault with a dangerous weapon. *Id.* We rejected the elements-to-elements comparison of the categorical approach in that context, and instead held that a defendant may be convicted of VICAR assault "when, *by his conduct*, he 'assaults' another person with a dangerous weapon 'in violation of' the state law charged in the indictment." *Id.* at 398 (emphasis added).

Addressing the effect of the enumerated federal offenses, we explained that the defendant's "presently charged conduct" must "constitute an assault under federal law,

---

[3] We also stated in *Manley* that the third "element" of a substantive VICAR assault offense is "that the defendant have committed an assault 'with a dangerous weapon.'" *Manley*, 52 F.4th at 147. But in accordance with this Court's understanding of VICAR, for the fourth element we stated that "the assault [must] have violated state or federal law." *Id.* Nowhere in that decision did we suggest that the state or federal assault also must violate a common-law version of that offense. *Id.* Indeed, we explicitly declined the defendant's invitation to consider the mens rea required for "VICAR assault" in lieu of the elements of the incorporated state assault offense. *Id.* at 148; *see also id.* at 152 (Niemeyer, J., writing separately) (explaining that the defendant had pleaded guilty to "the commission of VICAR assault . . . , the *elements* of which included violations of" the incorporated state offense).

while simultaneously also violating a state law." *Id.* at 397. In other words, even though the government did not need to prove as an element generic assault, the defendant's actual conduct had to fall within the definition of that enumerated federal offense. We did not consider whether the enumerated federal offense of "assault" created a separate element of a substantive VICAR conviction, nor did we consider whether the VICAR statute requires a "'look through' approach" for a § 924(c) "crime of violence" analysis. *See* 955 F.3d at 393; *Thomas*, 87 F.4th at 271 (citing *Keene*, 955 F.3d at 393).

Our holding in *Keene*, when understood in its proper context, is limited to permitting a defendant to challenge a substantive VICAR charge by arguing that the conduct alleged in the indictment falls outside the generic definition of the enumerated federal offense in the VICAR statute.[4] Neither *Thomas* nor the present case involved any such challenge to a substantive VICAR charge. Rather, in both cases we were asked to address the validity of a § 924(c) conviction. When presented with such a question, we ignore the *actual conduct* underpinning the predicate VICAR assault offense and examine only the *elements*

---

[4] The Supreme Court enunciated a similar principle when it analyzed an earlier federal racketeering statute that also listed certain enumerated offenses "by reference to state law." 18 U.S.C. § 1952 (the Travel Act); *Johnson v. United States*, 64 F.4th 715, 723 (6th Cir. 2023). In *United States v. Nardello*, the Court considered whether the Travel Act's prohibition on travel in interstate commerce with intent to further "extortion . . . in violation of the laws of the State in which the [crime is] committed," applied to extortionate conduct classified as "blackmail" under the applicable state law. 393 U.S. 286, 287 (1969). In holding that the Act applied to such extortionate conduct, the Supreme Court explained that the proper inquiry was "not the manner in which States classify their criminal prohibitions," but "whether the particular State involved prohibits the extortionate activity charged." *Id.* at 295. Turning to the Travel Act charges in that case, the Supreme Court concluded that the defendants' conduct fell within the generic term of "extortion," as used in the Travel Act, because "the indictment encompasse[d] a type of activity generally known as extortionate." *Id.* at 295–96.

17

of that offense to determine whether it categorically qualifies as a "crime of violence." Accordingly, our conclusion in *Keene* does not bear on the distinct categorical analysis required in this case or in *Thomas*.

## II.

When Congress decided not to incorporate the phrase "crime of violence" in every enumerated federal offense in the VICAR statute, Congress established a statutory scheme that allows for potentially meaningful differences between substantive VICAR crimes and "crime[s] of violence" under § 924(c). We have long recognized that it is Congress's prerogative to determine under what conditions an individual will be subject to a consecutive mandatory minimum sentence under § 924(c), and I am troubled by our elimination in *Thomas* of any distinction that Congress intended to create between certain substantive VICAR offenses and § 924(c) "crime[s] of violence." Accordingly, although we are bound by *Thomas* in the present case, I otherwise would have reversed the district court's judgment on the basis that no element of assault with a dangerous weapon under 18 U.S.C. § 1959(a)(3), in violation of the North Carolina statutory crime of assault with a deadly weapon, N.C. Gen Stat. § 14-33(c)(1), requires a sufficiently culpable mens rea to meet the requirements of the § 924(c) force clause.

18